# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 22, 2021

Lyle W. Cayce
Clerk

No. 19-60256

Mario Alberto Alejos-Perez, *also known as* Mario A. Alejos,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

Petition for Review of an Order of
the Board of Immigration Appeals
No. A 034 007 696

Before Higginbotham, Smith, and Dennis, *Circuit Judges*.
Jerry E. Smith, *Circuit Judge*:

Texas convicted Mario Alejos-Perez of three offenses. The Attorney General then initiated removal proceedings. The immigration judge ("IJ") concluded that each of the respective convictions rendered Alejos-Perez removable. The Board of Immigration Appeals ("BIA") agreed as to one of them. Granting Alejos-Perez's petition for review, we reverse and remand.

I.

Alejos-Perez is a Mexican citizen who committed the three crimes after the United States admitted him as a lawful permanent resident. In

2009,[1] he attempted to take a police officer's weapon.  In 2013, he committed theft.  In 2018, he possessed a controlled substance.

In support of removal, the government claimed that the 2009 and 2013 crimes "involve[d] moral turpitude" that renders Alejos-Perez removable under 8 U.S.C. § 1227(a)(2)(A)(ii).  The government also claimed that the 2018 crime "relat[ed] to a controlled substance (as defined in [21 U.S.C. § 802])," which renders him removable under § 1227(a)(2)(B)(i).

Alejos-Perez moved to terminate the proceeding, contending that the 2009 and 2013 offenses weren't crimes of moral turpitude and that his 2018 conviction didn't relate to a controlled substance.  The IJ rejected both contentions and ordered Alejos-Perez removed to Mexico.  The BIA dismissed his subsequent appeal, concluding that the 2018 conviction rendered him removable, but expressly declined to consider whether the 2009 and 2013 convictions were of crimes of moral turpitude.  Only the 2018 conviction is at issue here.

## II.

Although we generally lack "jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense" relating to a controlled substance, 8 U.S.C. § 1252(a)-(2)(C), we retain jurisdiction to review "questions of law," *id.* § 1252(a)-(2)(D).  Such review is *de novo*.  *Luna-Garcia v. Barr*, 932 F.3d 285, 288–89 (5th Cir. 2019), *cert. denied*, 141 S. Ct. 157 (2020).

"The BIA's determination that a violation of a state . . . law relates to a controlled substance violation presents a pure question of law." *Vazquez v. Sessions*, 885 F.3d 862, 867 (5th Cir. 2018).  The government "must connect

---

[1] The dates refer to the respective years of conviction.

No. 19-60256

an element of the alien's conviction to a drug defined in § 802."[2]

### III.
### A.

A state-drug-possession conviction renders an alien removable only if "the elements that make up the state crime of conviction relate to a federally controlled substance."[3] Courts must therefore (1) identify the "elements that make up the state crime of conviction" and then (2) determine whether those elements "relate to a federally controlled substance." *Mellouli*, 135 S. Ct. at 1990.

First, to identify the elements that make up the state crime of conviction, we examine the crime's "statutory definition[]." *Vazquez*, 885 F.3d at 871. But a statute can describe multiple offenses.[4] Oftentimes, statutes criminalize possession of multiple drugs.[5] Thus, where a drug-possession statute provides an "alternatively phrased" list of drugs, we must decide whether those alternative drugs constitute (1) "multiple elements," each of which is part of a separate drug offense, or, instead, (2) "various factual means of committing" a single drug offense. *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016).

---

[2] *Mellouli v. Lynch*, 135 S. Ct. 1980, 1991 (2015) (cleaned up); *cf.* 8 U.S.C. § 1229a-(c)(3)(A) (noting that the government "has the burden of establishing by clear and convincing evidence that . . . the alien is deportable").

[3] *Mellouli*, 135 S. Ct. at 1990; *see* § 1227(a)(2)(B)(i) (explaining that a "violation of . . . any law . . . of a State . . . relating to a controlled substance (as defined in [21 U.S.C. § 802])" renders an alien removable).

[4] *See Descamps v. United States*, 570 U.S. 254, 264 (2013) (noting that some statutes "effectively create[] several different crimes" (cleaned up)).

[5] *See, e.g.*, TEX. HEALTH & SAFETY CODE § 481.1031(b)(1)–(8) (describing eight types of drugs and providing twenty examples).

Where each drug constitutes an element of a separate crime, we call such a statute "divisible," because we can divide it into several crimes. *See id.* Conversely, where each drug is a factual means of proving a single offense, we call such a statute "indivisible," because we can't divide it into several crimes. *See id.* at 2248. Divisibility depends on (1) the statutory text, (2) state caselaw, and (3) the record of conviction. *Id.* at 2256–57. Divisibility is the central inquiry in the instant case. *See* Part III.B.1–3.

Second, after identifying the elements of the crime of conviction, we must determine whether those elements "necessarily involve a federally controlled substance." *Mellouli*, 135 S. Ct. at 1989. Moreover, where—as here—a state intermingles federally controlled and non-federally controlled drugs in a single statutory list,[6] we apply different approaches for indivisible (categorical approach) and divisible (modified-categorical-approach) statutes.

For indivisible statutes, there are two steps. We begin by "ignoring the particular facts of the case" and instead asking "whether the elements of the state conviction are the same as or narrower than the elements of the generic removability offense under federal law." *Vazquez*, 885 F.3d at 871. In other words, even where an alien possessed a federally controlled substance that's listed in an indivisible state statute, the Supreme Court commands that we don blinders and examine whether there's any drug in the statutory list that falls outside the federal statute. *See id.* at 872; *cf. Descamps*, 570 U.S. at 261. We call that the "categorical approach," because we look at the *category* of drugs that the statute criminalizes, not the *specific* drug that the

---

[6] *See, e.g.*, *Vazquez*, 885 F.3d at 870–72 (concluding that an alien was not necessarily removable due to possession of a federally controlled drug, because the statute also "contain[ed] at least two substances . . . that are not included in any federal schedule").

alien possessed.  *Cf. Mathis*, 136 S. Ct. at 2248.

On the second step, the blinders come off.  The alien must "point to his own case or other cases in which the state courts in fact did apply the statute" to substances outside the federal statute, to show that there's "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside" the federal statute.  *United States v. Castillo-Rivera*, 853 F.3d 218, 222 (5th Cir. 2017) (en banc) (cleaned up) (emphasis omitted).  It is not enough just to identify a case that is "currently pending in [a] Texas intermediate appellate court" or a brief that mentions a drug, because "a brief filed in [a] case is not the law."  *Vetcher v. Barr*, 953 F.3d 361, 368 (5th Cir.), *cert. denied*, 2020 U.S. LEXIS 5581 (Nov. 16, 2020).  In other words, the alien must show that "Texas courts have *actually applied*" the statute to conduct beyond the federal statute.  *Castillo-Rivera*, 853 F.3d at 222.

For divisible statutes, blinders aren't necessary: We "look at a limited class of documents from the record of a prior conviction to determine what crime, with what elements, a defendant was convicted of . . . ."  *United States v. Frierson*, 981 F.3d 314, 318 (5th Cir. 2020) (cleaned up).  After identifying which of the several offenses in the statute the state convicted the alien of, we "compar[e] that crime's elements to those of the generic offense."  *Id.* (cleaned up)  For instance, if the alien possessed a federally controlled drug listed in a divisible statute, that suffices to show that the offense of conviction related to a controlled substance, even if that statute also lists non-federally controlled substances.  We call that the "modified categorical approach," because we still consider the *category* of drug, but we *limit that category* only to the drug actually prosecuted, not the entire statutory list.  *Id.*

## B.

Texas convicted Alejos-Perez of violating Texas Health & Safety

No. 19-60256

Code § 481.1161(a), which prohibits a person from "knowingly possess[ing] a controlled substance listed in Penalty Group 2-A." Penalty Group 2-A, in turn, "consists of any material . . . listed by name . . . or contained within one of the structural classes defined in this subsection." § 481.1031(b). It then lists eight categories. *Id.* § 481.1031(b)(1)–(8). Some merely name a substance,[7] and others describe types of substances, listing names only as examples.[8]

Alejos-Perez possessed MMB-Fubinaca, which, he agrees, is a federally controlled substance.[9] But Penalty Group 2-A also includes at least one substance that isn't federally controlled. Thus, to decide whether his 2018 conviction renders him removable, we need to determine whether we can parse MMB-Fubinaca from those other drugs; we decide that by determining whether Penalty Group 2-A is divisible.[10] The government says it's divisible, Alejos-Perez says not. To decide, we examine (1) the statutory text, (2) state caselaw, and (3) the record of conviction.[11] Because each proves inconclu-

---

[7] *See* § 481.1031(b)(1) ("WIN-55,212-2").

[8] *See* § 481.1031(b)(5) ("[A]ny compound containing a [particular chemical structure] . . . including: Naphthoylindane . . . ." (cleaned up))

[9] That substance doesn't appear in Penalty Group 2-A, but the information describes it as falling within "the structural class" that's defined in § 481.1031(b)(5). The IJ and BIA suggested that it falls within § 481.1031(b)(3).

[10] Although the government is correct to say that we must determine whether "481.1161 is divisible," it would be divisible only by reference to some divisible statutory list. Thus, as Alejos-Perez properly notes, we must determine "whether the substances listed in Penalty Group 2-A are elements of Texas HSC § 481.1161 or factual means . . . ." Thus, asking whether Penalty Group 2-A is divisible is a shorthand for asking whether § 481.1161 is divisible by virtue of its reference to Penalty Group 2-A.

[11] *See Mathis*, 136 S. Ct. at 2256. Courts should examine the record where "state law fails to provide clear answers." *Id.* Because Texas law fails to provide a clear answer, we can examine the record.

No. 19-60256

sive, the government has failed to show that Penalty Group 2-A is divisible.

1.

Sometimes "the statute on its face may resolve the issue." *Mathis*, 136 S. Ct. at 2256. The Supreme Court has delineated two extremes, which could reveal whether a statute is divisible. Neither is present here.

First, "[i]f statutory alternatives carry different punishments, then . . . they must be elements," rendering the statute divisible. *Id.* Although convictions based on Penalty Group 2-A can carry different punishments, the punishments vary by the *amount*, not by the *type* of drug possessed. *See* § 481.1161(b). Thus, Penalty Group 2-A's statutory alternatives don't carry different punishments.[12]

Second, "if a statutory list is drafted to offer illustrative examples, then it includes only a crime's means of commission." *Mathis*, 136 S. Ct. at 2256 (quotation omitted). To be sure, within some of the alternatives, Penalty Group 2-A lists examples,[13] but it treats the relevant alternatives as

---

[12] Some courts have concluded that "[t]he statutory provision of the same punishment . . . could indicate that the alternatives are means." *United States v. Aviles*, 938 F.3d 503, 513 (3d Cir. 2019). In other words, the Third Circuit suggests that differing punishments not only are sufficient to show divisibility but also might help to show indivisibility. Because we treat Penalty Group 2-A as indivisible in any event, we don't decide whether the Third Circuit is right.

[13] *See, e.g.*, § 481.1031(b)(2). One argument is that we should analyze the divisibility of only one of the eight subsections—as distinct from the entire Penalty Group. We previously used that approach where a litigant made such an argument. *See United States v. Reyes*, 866 F.3d 316, 319–20 (5th Cir. 2017). But Alejos-Perez doesn't expressly press that theory. And it's not clear which subsection we would analyze, because there's conflicting record evidence about which subsection MMB-Fubinaca falls into: Although the information uses the language of § 481.1031(b)(5) *verbatim*, the IJ and BIA treated MMB-Fubinaca as if it falls within § 481.1031(b)(3). We don't need to decide that issue, however, because we conclude that the categorical approach is appropriate in any event.

an exhaustive list of prohibited substances.[14]  It doesn't introduce that list with words—such as "including"—that might denote the introduction of examples.[15]  Alejos-Perez's contention to the contrary is based on an obsolete version of Penalty Group 2-A that introduced its statutory alternatives with "including."[16]

In sum, Penalty Group 2-A neither provides a list of examples nor attaches varying degrees of punishment.  Thus, the government has not shown that the text "on its face . . . resolve[s] the issue."  *Mathis*, 136 S. Ct. at 2256.

2.

A state's highest court can also "definitively answer[] the question" of divisibility.  *Id.*  The government points to two lines of Texas caselaw. Neither definitely determines whether Penalty Group 2-A is divisible.

First, in *Watson v. State*, 900 S.W.2d 60, 62 (Tex. Crim. App. 1995), reviewing a double-jeopardy claim, the court concluded that "the Legislature

---

[14] *See* § 481.1031(b) ("Penalty Group 2-A consists of any material . . . *listed by name . . .* or *contained within one of the structural classes defined in this subsection*." (emphases added)).

[15] *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 132 (2012) ("The verb *to include* introduces examples, not an exhaustive list.").

[16] For that interpretation, Alejos-Perez cites *State v. Moseley*, No. 09-14-00279-CR, 2015 WL 474331, at *4 (Tex. App.—Beaumont Feb. 4, 2015, pet. ref'd) (cleaned up).  But *Moseley* interpreted a 2011 version of Penalty Group 2-A, which was more open-ended than the current (2015) version.  *Compare* Act of May 28, 2011, 82nd Leg., ch. 170, 2011 Tex. Sess. Law Serv. 170 (amended 2015) (current version Tex. Health and Safety Code § 481.1031) ("Penalty Group 2-A consists of any quantity of a [particular compound] . . . *including* . . . ." (emphasis added)), *with* § 481.1031(b) ("Penalty Group 2-A consists of any material . . . listed . . . in this subsection . . . .").  In fact, *Moseley*, 2015 WL 474331, at *3, relied in large part on the presence of "including."

No. 19-60256

intended to make possession of *each* individual substance within the same penalty group a separate and distinct offense." But "double jeopardy cases . . . shed little light on divisibility," because, in Texas, the double-jeopardy analysis "bottoms out in an examination of the factual differences between statutory alternatives," which cannot prove "divisibility with the needed certainty."[17] Thus, *Watson* doesn't control.

Second, Texas's intermediate appellate courts have extended *Watson* to the divisibility context for Penalty Groups 1 and 2.[18] Neither party, however, cites any such case for Penalty Group 2-A. And Penalty Groups 1, 2, and 2-A employ varying language and structures.[19] In any event, those are "mere intermediate state court opinion[s]," which, we have suggested, don't definitively resolve the issue—presumably, the higher court could come to a different conclusion.[20]

In sum, the government failed to show that Texas's highest criminal court—or any court, for that matter—has "definitively answer[ed]" the divisibility question for Penalty Group 2-A. *Mathis*, 136 S. Ct. at 2256.

---

[17] *United States v. Herrold*, 883 F.3d 517, 528, 529 (5th Cir. 2018) (en banc), *vacated on other grounds*, 139 S. Ct. 2712 (2019).

[18] *See Nichols v. State*, 52 S.W.3d 501, 503 (Tex. App.—Dallas 2001, no pet.); *Nutt v. State*, No. 01-17-00221-CR, 2018 WL 3580926, at *4 (Tex. App.—Houston [1st Dist.] July 26, 2018, pet. ref'd). Alejos-Perez, in turn, cites a case in which the court listed the elements of possession of a controlled substance without requiring identification of the substance at issue. *See Nunn v. State*, 640 S.W.2d 304, 305 (Tex. Crim. App. 1982). But that case didn't address divisibility, so it does not definitively determine that issue.

[19] *Compare* § 481.1031, *with* Tex. Health & Safety Code §§ 481.103, .102.

[20] *Reyes*, 866 F.3d at 322. Normally, "a decision by an intermediate appellate state court is a datum for ascertaining state law which is not to be disregarded . . . ." *Tex. Dep't of Hous. & Cmty. Affairs v. Verex Assur., Inc.*, 68 F.3d 922, 928 (5th Cir. 1995) (quotation omitted). But that rule doesn't control where we are looking for state law that "*conclusively* resolves the question." *Reyes*, 866 F.3d at 322 (emphasis added).

3.

Finally, courts can examine "the record of a prior conviction itself." *Id.* For instance, if the "indictment and correlative jury instructions" contain "a single umbrella term," then "each alternative is only a possible means of commission . . . ." *Id.* at 2257. On the other hand, if the record "referenc[es] one alternative term to the exclusion of all others, then the statute contains a list of elements." *Id.* The record here pulls in both directions.

The information mentions MMB-Fubinaca along with "the structural class" defined in § 481.1031(b)(5) to the exclusion of other categories of drugs. That suggests that Penalty Group 2-A lists elements and is thus divisible. Conversely, the information and judgment of conviction both refer to Penalty Group 2-A as a whole. That umbrella term suggests that Penalty Group 2-A lists means and is thus indivisible. Given that countervailing language, the record does not "speak plainly" on the issue of divisibility.[21]

4.

Although "indeterminacy should prove more the exception than the rule," we conclude that state law and the record of conviction do not clearly show whether Penalty Group 2-A is divisible. *Mathis*, 136 S. Ct. at 2257. Because it's up to "the Government" to "connect an element of the alien's

---

[21] *Mathis*, 136 S. Ct. at 2257. *Mathis*, 136 S. Ct. at 2256–57, directed courts to examine "jury instructions," so the government asks us to examine the pattern jury instructions for § 481.1161. But those pattern jury instructions aren't in Alejos-Perez's record of conviction, because he pleaded *nolo contendere* without going to trial. Although the Eleventh Circuit analyzed jury instructions even where a defendant pleaded guilty, it did so as part of an analysis of Florida law—not the record—because those jury instructions were "issued by the Florida Supreme Court" and "are presumed to be correct interpretations of Florida law." *Guillen v. U.S. Att'y Gen.*, 910 F.3d 1174, 1183, 1177 (11th Cir. 2018) (cleaned up). By contrast, the pattern jury instructions for § 481.1161 are the product of a State Bar of Texas committee, which has no authority to decide state law. We thus decline to examine them.

conviction to a drug defined in § 802" and divisibility is part of that analysis, the government failed to show that Penalty Group 2-A is divisible. *See Mellouli*, 135 S. Ct. at 1991 (cleaned up). Because the government has not shown that the modified categorical approach is called for, we apply the categorical approach.[22]

## IV.
### A.

Application of the first step of the categorical approach is straightforward. The parties agree that Penalty Group 2-A criminalizes possession of at least one substance—naphthoylindane—that the federal statute doesn't mention. *See* § 481.1031(b)(5). Thus, Penalty Group 2-A is broader than the federal statute, and "there is no categorical match" between Penalty Group 2-A and its federal counterpart. *See Vetcher*, 953 F.3d at 367.

### B.

Because Penalty Group 2-A is not a categorical match, we must identify the appropriate result. Alejos-Perez asks us to terminate his removal proceedings. We decline to do so for two reasons.

---

[22] *See Mellouli*, 135 S. Ct. at 1986 & n.4. Moreover, in *Mathis*, 136 S. Ct. at 2257, the Court contemplated cases in which the divisibility analysis is indeterminate. In such situations, in the context of applying a sentencing enhancement, "a sentencing judge will not be able to satisfy [the Court's] demand for certainty when determining whether a defendant was convicted of a generic offense." *Id.* (cleaned up). That certainty in "identification of generic convictions" is necessary to "establish . . . predicate offenses" for application of a sentencing enhancement. *Shepard v. United States*, 544 U.S. 13, 19 (2005).

In other words, in the sentencing context, where the divisibility analysis proves indeterminate, the government loses, and the sentencing enhancement can't apply. Similarly, in the removal context, an indeterminate divisibility analysis means that the government loses, and the modified categorical approach can't apply.

1.

The categorical approach involves two steps. Once it's clear that Penalty Group 2-A is not a categorical match to its federal counterpart, Alejos-Perez "must also show a realistic probability . . . that the State would apply its statute to conduct that falls outside the generic definition of the crime" under federal law.[23] We are unable to resolve that issue, because the BIA didn't address it, and we can "only affirm the BIA on the basis of its stated rationale for ordering an alien removed from the United States." *Vazquez*, 885 F.3d at 872 (cleaned up). We thus remand for consideration of whether Alejos-Perez has shown a realistic probability that Texas would prosecute conduct that falls outside the relevant federal statute.

2.

The BIA also declined to address the government's argument that Alejos-Perez's 2009 and 2013 convictions render him removable. Alejos-Perez admits that, even if we grant his petition for review, "remand would be required to allow the BIA to address the additional ground of removability." We thus remand for consideration of whether Alejos-Perez's 2009 and 2013 convictions render him removable, in the event that Alejos-Perez succeeds on the realistic-probability inquiry.

The petition for review is GRANTED. The order of the BIA is REVERSED and REMANDED for proceedings as needed. We express no view on the proper result on remand.

---

[23] *Castillo-Rivera*, 853 F.3d at 222 (cleaned up); *see also Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013) ("By 'generic,' we mean the offenses must be viewed in the abstract, to see whether the state statute shares the nature of the federal offense that serves as a point of comparison.").