# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 16, 2021

Lyle W. Cayce
Clerk

No. 19-60519

Arturo Ochoa-Salgado,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

Petition for Review of an Order of
the Board of Immigration Appeals
No. A 028 296 392

Before Smith and Ho, *Circuit Judges*, and Barker, *District Judge*.*
Jerry E. Smith, *Circuit Judge*:

Ochoa-Salgado is a Mexican citizen who was convicted in Texas of delivering cocaine. Because an Immigration Judge ("I.J.") found him removable, he asks for cancellation of removal. But, to qualify for that, Ochoa-Salgado must not have been convicted of an offense that falls within the Controlled Substances Act ("CSA"). Because his Texas conviction is included in the CSA, we deny the petition for review.

---

* U.S. District Judge for the Eastern District of Texas, sitting by designation.

No. 19-60519

I.

Ochoa-Salgado is a Mexican citizen whom the United States admitted as a lawful permanent resident alien. In 2008, he was convicted in Texas of manufacture or delivery of cocaine in violation of Texas Health and Safety Code § 481.112. In 2013, the Department of Homeland Security initiated removal proceedings, which occurred in two parts: (A) proceedings that occurred before *Mathis v. United States*, 136 S. Ct. 2243 (2016), and (B) post-*Mathis* proceedings.

A.

The government initially claimed that Ochoa-Salgado was removable under 8 U.S.C. § 1227(a)(2)(A)(iii) ("(A)(iii)"), which allows removal of aliens "convicted of an aggravated felony." The term "aggravated felony" includes "drug-trafficking crimes." *Vasquez-Martinez v. Holder*, 564 F.3d 712, 719 n.11 (5th Cir. 2009) (cleaned up). "[D]rug trafficking crimes," in turn, constitute "any felony punishable under the [CSA]." *Id.* (cleaned up). Thus, to determine whether a state drug offense constitutes an aggravated felony, the I.J. would need to "(1) identify the elements that make up [§ 481.112] and then (2) determine whether those elements" fall within the CSA. *Alejos-Perez v. Garland*, 991 F.3d 642, 647 (5th Cir. 2021) (cleaned up).

The government thus faced a hurdle in showing that § 481.112 falls within the CSA: "Delivery," under § 481.112, can occur through (1) actual transfer, (2) constructive transfer, or (3) an offer to sell.[1] But we had said that § 481.112's offer-to-sell theory "does not fall within [a sentencing guide-line's] definition of [a] 'drug trafficking offense.'" *See Vasquez-Martinez*,

---

[1] *See* § 481.002(8) (defining "[d]eliver" as "to transfer, actually or construc-tively," which "includes offering to sell").

2

No. 19-60519

564 F.3d at 718 (citation omitted). Apparently on the assumption that we would interpret the CSA congruently, the government became concerned that, on the record before it, it could not prove that Ochoa-Salgado had not been convicted under the offer-to-sell theory.

Thus, the government changed its ground for removal, now claiming that Ochoa-Salgado was removable because his § 481.112 offense "relat[ed] to a controlled substance" under § 1227(a)(2)(B)(i) ("(B)(i)"). Ochoa-Salgado conceded removability.

The government's switch initially seemed savvy, because (B)(i) conferred an uncontroversial basis for removal. Moreover, when Ochoa-Salgado later moved for cancellation of removal, he—instead of the government—bore the burden of showing that he had not been "convicted of any aggravated felony."[2] The I.J. found that he failed to meet that burden, and the Board of Immigration Appeals ("BIA") agreed. Ochoa-Salgado petitioned for review. *See Ochoa-Salgado v. Yates*, 673 F. App'x 454 (5th Cir. 2017) (per curiam).

## B.

Before we ruled, however, *Mathis*, 136 S. Ct. at 2249, pulled the rug out from under the government's plan to remove Ochoa-Salgado by holding that use of record evidence isn't a given anymore in determining what crime an alien committed.[3] Specifically, record evidence can elucidate the

---

[2] 8 U.S.C. § 1229b(a)(3); *see id.* § 1229a(c)(4)(A)(i) ("An alien applying for relief . . . from removal has the burden of proof to establish that the alien . . . satisfies the applicable eligibility requirements.").

[3] *See United States v. Hinkle*, 832 F.3d 569, 574 (5th Cir. 2016) (noting that *Mathis* "sets forth how a court determines whether . . . documents pertaining to the prior conviction may be used to ascertain if that conviction comes within a federal definition").

elements of a state criminal statute only if that statute is "divisible." *Id.* If the statute lists "multiple elements, each of which is part of a separate . . . offense," then it is "divisible." *Alejos-Perez*, 991 F.3d at 647 (cleaned up). Conversely, if the statute lists "various factual means of committing a single . . . offense," it is "indivisible." *Id.* (cleaned up). *Mathis* also gave guidance on determining divisibility. *See Mathis*, 136 S. Ct. at 2256–57.

That helped Ochoa-Salgado: Although we had said that § 481.112 is "divisible," we concluded, after *Mathis*, that it is "indivisible." *United States v. Tanksley*, 848 F.3d 347, 351–52 (5th Cir. 2017). And now that the I.J. could no longer use record evidence to parse § 481.112, the presence of the offer-to-sell theory would potentially render § 481.112 in its entirety outside the CSA.[4] And, if § 481.112 falls outside the CSA, then it is not an aggravated felony, and Ochoa-Salgado would be eligible for cancellation of removal. *See Vasquez-Martinez*, 564 F.3d at 719 n.11; § 1229b(a)(3). On the initial petition to us, therefore, we remanded for the BIA to take another look in light of that new law. *Ochoa-Salgado*, 673 F. App'x at 455.

On remand, the government challenged what it had previously assumed was true, now claiming that § 481.112's offer-to-sell theory falls within the CSA. The BIA agreed that "the conduct necessary to prove that an 'offer to sell' was made . . . qualifies as a felony under the CSA."[5] On petition for

---

[4] *See Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013); *United States v. Evans*, 699 F.3d 858, 866 (6th Cir. 2012) ("Because the Ohio court documents do not indicate whether Evans was convicted for selling cocaine or offering to sell cocaine, the panel should look to the lesser of the two offenses, an offer to sell cocaine, to determine whether this offense categorically qualifies as a controlled substance offense . . . ."), *abrogated on other grounds by United States v. Havis*, 927 F.3d 382 (6th Cir. 2019).

[5] Although Ochoa-Salgado contends that the BIA failed to apply *Mathis*, he confuses the second BIA decision—where the BIA applied our post-*Mathis* precedent—with the first—where the BIA applied our old precedent.

No. 19-60519

review, Ochoa-Salgado disagrees with that conclusion. We have jurisdiction to review questions of law on petition for review of a decision of the BIA, 8 U.S.C. § 1252(a)(2)(D), and our review is *de novo*, *Vazquez v. Sessions*, 885 F.3d 862, 870 (5th Cir. 2018).

II.

We must decide (A) whether our precedent resolves this case and (B) if not, whether the offer-to-sell theory is included in the CSA. In answer, we conclude that precedent provides no answer, and the offer-to-sell theory does fall within the CSA.

A.

Section 481.112's offer-to-sell theory does not fit within U.S.S.G. § 2L1.2's former definition[6] of a "[d]rug trafficking offense"[7] or U.S.S.G. § 4B1.2's definition of a "controlled substance offense."[8] Moreover, in two cases, we relied on a governmental concession that an offer-to-sell theory is

---

[6] Moreover, after our cases interpreting § 2L1.2, the Sentencing Commission amended the language of § 2L1.2's commentary to include offers to sell. *See United States v. Ibarra-Luna*, 628 F.3d 712, 715 (5th Cir. 2010); § 2L1.2 cmt. n.2. And "a Sentencing Commission amendment modifying Guidelines commentary can override our precedent." *United States v. Longoria*, 958 F.3d 372, 377 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 978 (2021). The amendment "must clearly overrule our caselaw to warrant a departure from the rule of orderliness." *Id.* Because the inclusion of offers to sell clearly overrules our precedents, we are not bound by them.

[7] *See* § 2L1.2 cmt. n.2; *United States v. Morales-Martinez*, 496 F.3d 356, 358 (5th Cir. 2007); *United States v. Gonzales*, 484 F.3d 712, 714 (5th Cir. 2007) (per curiam); *Vasquez-Martinez*, 564 F.3d at 718; *United States v. Price*, 516 F.3d 285, 288–89 (5th Cir. 2008).

[8] *See* § 4B1.2(b); *United States v. Hinkle*, 832 F.3d 569, 572 (5th Cir. 2016); *Tanksley*, 848 F.3d at 352.

not within the CSA.[9]  None of that authority binds us.

First, because removal and sentencing-guideline cases share the same categorical approach,[10] decisions that determine whether the offer-to-sell theory falls within a guideline could be helpful here if that guideline were relevantly analogous to the CSA.  Although §§ 2L1.2 and 4B1.2 contain language that resembles the CSA,[11] the CSA, unlike those guidelines, criminalizes attempted transfers of drugs.[12]  Thus, assuming that the CSA's inclusion of attempt is relevant to the offer-to-sell theory, *see* Part II.B, *infra*, that provision differentiates the CSA from §§ 2L1.2 and 4B1.2.  As a result, our opinions interpreting those provisions do not constrain our interpretation of the CSA.

Second, in two cases, we relied on the government's concession that an offer-to-sell theory fell outside the CSA.  *See Ibarra-Luna*, 628 F.3d at 715–16; *Ibanez-Beltran*, 858 F.3d at 296.  Besides our acknowledgment of those concessions, we made no express conclusions about whether an offer to sell falls within the CSA.  *See Ibarra-Luna*, 628 F.3d at 715–16; *Ibanez-Beltran*,

---

[9] *See United States v. Ibarra-Luna*, 628 F.3d 712, 715–16 (5th Cir. 2010); *Ibanez-Beltran v. Lynch*, 858 F.3d 294, 296 (5th Cir. 2017) (per curiam).

[10] *Compare Mathis*, 136 S. Ct. at 2250, *with Alejos-Perez*, 991 F.3d at 647.

[11] *Compare* 21 U.S.C. § 841(a)(1) (making it unlawful to "manufacture, distribute, or dispense . . . a controlled substance"), *with* § 2L1.2 cmt. n.1(B)(iii) (2003) (defining a "drug trafficking offense" as involving "the manufacture, . . . distribution, or dispensing of a controlled substance") *and* § 4B1.2(b) (defining a "controlled substance offense" as one involving "the manufacture, . . . distribution, or dispensing of a controlled substance").

[12] The CSA makes it unlawful "to . . . *distribute* . . . a controlled substance." § 841(a)(1) (emphasis added).  "Distribute" means "to *deliver*."  21 U.S.C. § 802(11) (emphasis added).  "Deliver" includes the "*attempted transfer* of a controlled substance." § 802(8) (emphasis added).  Thus, the CSA criminalizes attempted transfers.

858 F.3d at 296.  We must decide, therefore, whether those panels' reliance on a party's concession binds us.

Our en banc court declined to decide how to apply the "rule of orderliness in cases where a party made an explicit concession before a prior panel that is dispositive in a future case." *United States v. Castillo-Rivera*, 853 F.3d 218, 221 n.1 (5th Cir. 2017) (en banc).  But we have made some points clear.  For instance, a panel's assumption "is not binding if the adverse party did not challenge and we did not consider" that issue.[13]  Thus, the rule of orderliness applies where (1) a party *raises* an issue[14] and (2) a panel gives that issue

---

[13] *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 229 n.15 (5th Cir. 2020) (cleaned up); *accord Thomas v. Tex. Dep't of Crim. Just.*, 297 F.3d 361, 370 n.11 (5th Cir. 2002) ("When an issue is not argued . . . in a decision, such decision is not precedent to be followed in a subsequent case in which the issue arises." (cleaned up)); *see also Johnson v. Halstead*, 916 F.3d 410, 419 n.3 (5th Cir. 2019) (noting that a party's "failure to raise [a] question also means that [an] opinion is not precedent on that issue").  That rule comports with our statements that "a ruling on an issue not raised" constitutes *dictum*. *United States v. Lam*, 803 F. App'x 796, 797 (5th Cir.) (per curiam) (cleaned up), *cert. denied*, 141 S. Ct. 425 (2020); *see also Garcia-Hernandez v. United States*, 915 F.3d 558, 560 n.1 (8th Cir. 2019); *Rumsfeld v. United Techs. Corp.*, 315 F.3d 1361, 1373 (Fed. Cir. 2003) ("Such a decision, merely accepting the parties' agreement, is not binding on later panels.").

[14] *See Richardson*, 978 F.3d at 229 n.15 (noting that our handling of an issue "is not binding if the adverse party did not challenge" that issue (cleaned up)); *see also Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 183 (1979) (concluding that a decision was not binding where "the issue was by no means adequately presented to . . . this Court"); *Rhone Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 284 F.3d 1323, 1334 (Fed. Cir. 2002) ("[T]he parties' not having contested the issue, *Heidelberg Harris* is not binding authority . . . ."); *Cousins v. Sec'y of the U.S. Dep't of Transp.*, 880 F.2d 603, 608 (1st Cir. 1989) (concluding that a previous opinion wasn't binding where the court had "no reason to believe that any party in [that case] briefed or argued the question"); *Villanueva v. United States*, 893 F.3d 123, 131 (2d Cir. 2018) (declining to follow "at most an implicit holding" where "there is no indication in any of these cases that the appellants" raised that issue); *Mays v. Sprinkle*, 992 F.3d 295, 302 n.4 (4th Cir. 2021) ("[N]either party raised [an issue] and the discussion should not be read to resolve this issue."); *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 559 (6th Cir. 2004) ("[I]n *Grimes*, the plaintiff never argued [an issue], such that the question before us in today's case was simply not before us in *Grimes*.");

*reasoned consideration.*[15]  But where a party concedes an issue, that party does not *raise* it.  And where a panel relies on that concession, without further analysis, it does not give the issue *reasoned consideration*.  Thus, our unexamined reliance on a party's concession does not bind a future panel.

And that rule makes sense:  "A party can concede a legal issue for divers reasons."  *Castillo-Rivera*, 853 F.3d at 234 (Smith, J., dissenting).  For instance, a lawyer may "decide that it is better to focus the court on other perceptively more winnable issues" or "wish to avoid disclosing embarrassing facts to the judge or jury."  *Id.*  Thus, a party's idiosyncratic interests "may prevent the adequate presentation of all the aspects of a case and thus induce judicial neglect of those aspects, with resultant inadequacy in the judicial generalizations."  *Aero Spark Plug Co. v. B. G. Corp.*, 130 F.2d 290, 299 (2d Cir. 1942) (Frank, J., concurring).  In a word, if we found ourselves bound by our previous reliance on a concession, that would impose an "extreme version of the rule of orderliness."  *Castillo-Rivera*, 853 F.3d at 235 (Smith, J.,

---

*Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1289 (10th Cir. 2017) (determining that a previous decision never decided an issue where "the parties never raised the issue"); *Rosenberg v. DVI Receivables XIV, LLC*, 818 F.3d 1283, 1289 (11th Cir. 2016) (noting that a court's application of an incorrect deadline was not binding because "there is no indication that the parties urged . . . applying the [correct] deadline").

[15] *See Richardson*, 978 F.3d at 229 n.15 (noting that a panel's assumption "is not binding if . . . we did not consider" the issue); *Sinotes-Cruz v. Gonzales*, 468 F.3d 1190, 1203 (9th Cir. 2006) (rejecting the binding force of a precedent where an "issue . . . was not presented for review, [and] was not given reasoned consideration"); *United States v. Johnson*, 256 F.3d 895, 914 (9th Cir. 2001) (en banc) ("[W]here a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit."); *Nat'l Cable Television Ass'n, Inc. v. Am. Cinema Eds., Inc.*, 937 F.2d 1572, 1581 (Fed. Cir. 1991) (declining to accept a panel's resolution of an issue that was done "with little or no analysis"); *Rosenberg*, 818 F.3d at 1289 (noting that a court's application of an incorrect deadline was not binding, because "[t]here is, however, no analysis of the issue offered in the court's opinion").

dissenting). We decline to do so.

In short, where a party concedes an issue and a panel fails to give it reasoned consideration, a ruling relying on that concession isn't an affirmation of the conceded proposition that operates as binding precedent. Thus, the rule of orderliness does not apply to our previous reliance on the government's concession that an offer to sell falls outside the CSA.

### B.

Because none of that precedent binds us, we must decide whether § 481.112's offer-to-sell theory falls within the CSA, which makes it unlawful for "any person knowingly or intentionally . . . to . . . *distribute* . . . a controlled substance." § 841(a)(1) (emphasis added). "Distribute," in turn, "means to *deliver* . . . a controlled substance." § 802(11) (emphasis added). "Deliver" includes the "*attempted transfer* of a controlled substance." § 802(8) (emphasis added). And, to establish attempt, "the government must prove (1) that the defendant[] acted with the kind of *culpability* required for the crime . . . and (2) that the defendant[] engaged in conduct constituting a *substantial step* toward commission of the crime."[16] The government contends that § 481.112's offer-to-sell theory requires (1) the requisite culpability and (2) a substantial step. We agree.

First, the CSA prohibits intentional distribution. § 841(a)(1). Intent to distribute is therefore the requisite *mens rea*. The government agrees. So do other circuits.[17] Although Texas courts have sometimes used inconsistent

---

[16] *United States v. Mitchell*, 484 F.3d 762, 773 n.7 (5th Cir. 2007) (emphases added); *see also Pascual v. Holder*, 723 F.3d 156, 159 (2d Cir. 2013).

[17] *See Evans*, 699 F.3d at 867 (concluding that a state offense that requires "the intent to sell a controlled substance" suffices); *Pascual*, 723 F.3d at 159 (requiring "the intent . . . to carry out the transaction").

No. 19-60519

language about the *mens rea* necessary to violate § 481.112,[18] Texas appellate courts consistently conclude that, if a person offers to sell, "with no intent to sell narcotics," but instead the intent "to defraud [the buyer] of his money," that conduct "is not a delivery of controlled substance by offer to sell."[19] The only contrary authority is an unpublished opinion that employed demonstrably erroneous reasoning.[20] Thus, under Texas law, § 481.112 requires an

---

[18] *Compare Francis v. State*, 890 S.W.2d 510, 513 (Tex. App.—Amarillo 1994, pet. ref'd) ("All that need be found is that an offer was made . . . which would indicate appellant *intended to sell* a controlled substance." (emphasis added)), *with id.* ("The mere fact that appellant was stopped short of his intended purpose of an actual delivery does not negate the fact that he *intended to make an offer to sell* . . . ." (emphasis added)).

[19] *Garber v. State*, 671 S.W.2d 94, 99 (Tex. App.—El Paso 1984, no pet.); *see also Douglas v. State*, 688 S.W.2d 687, 688 (Tex. App.—Texarkana 1985, pet. ref'd) ("Proof that Douglas possessed fake methaqualone pills at the time and place agreed upon corroborates only that he intended to defraud the officers. While that act could be a criminal offense, it is not delivery of a controlled substance." (citation omitted)); *Knight v. State*, 91 S.W.3d 418, 424 (Tex. App.—Waco 2002, no pet.) ("She specifically denied having any intent to actually sell cocaine . . . . [S]he testified that she intended to steal his money . . . . These conflicts in the evidence presented the jury with a credibility issue to resolve.").

[20] *See Wiltz v. State*, No. B14-92-00263-CR, 1994 WL 468432, at *8 (Tex. App.—Houston [14th Dist.] Sept. 1, 1994, pet. ref'd) ("[I]ntent to actually sell a controlled substance is not required for the offense of delivery by offer to sell."). *Wiltz, id.* at *8, based that conclusion on one paragraph of *Stewart v. State*, 718 S.W.2d 286, 288 (Tex. Crim. App. 1986), where the court concluded that, to conduct an offer to sell, "[a] defendant need not even have any controlled substance. All he need do . . . is state that he had a hundred dollar bag of heroin he would sell to the officers." But *Wiltz* neglects to mention that that paragraph in *Stewart*, 718 S.W.2d at 288, was about "[t]he element of 'controlled substance,'" where § 481.112 requires four elements, namely that "(1) a person (2) knowingly or intentionally (3) delivers (4) a controlled substance." Thus, *Wiltz* claims that *Stewart*, in addressing *element 4*, impliedly abrogated several cases about *element 2*. Put differently, *Stewart* is about the requisite *actus reus*; it was silent on *mens rea*. *See Iniguez v. State*, 835 S.W.2d 167, 171 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) ("[*Stewart*] held that the offense of delivery by offer to sell is complete by the mere utterance of the words . . . regardless of whether a transfer takes place or whether the substance transferred is an actual controlled substance or not.").

intent to sell, which mirrors the requisite *mens rea* under the CSA, namely intent to distribute.

Second, to show a substantial step, the government must prove an act that is "strongly corroborative of the actor's criminal purpose." *United States v. Hernandez-Galvan*, 632 F.3d 192, 198 (5th Cir. 2011) (cleaned up). "[R]emote preparation" will not do. *Id.* (cleaned up). An offer to sell strongly corroborates criminal purpose, because it "is an act perpetrated in furtherance of a sale, typically as part of the negotiation for the price and quantity." *Evans*, 699 F.3d at 868. That's led several circuits to conclude that "the act of offering to sell a controlled substance is a substantial step towards committing the crime of distributing a controlled substance."[21] That result is also consistent with our caselaw in other contexts.[22] Thus, an offer to sell under § 481.112 constitutes attempted delivery under the CSA.

The Ninth Circuit came to a different conclusion by saying that an offer to sell "criminalizes solicitation"—as distinct from attempt—which doesn't fall within the CSA. *United States v. Rivera-Sanchez*, 247 F.3d 905, 908–09 (9th Cir. 2001) (en banc), *superseded on other grounds by* § 2L1.2 cmt. n.4 (2002). We decline to follow *Rivera-Sanchez* for two reasons:

---

[21] *Evans*, 699 F.3d at 867; *see also Pascual*, 723 F.3d at 159 ("Without doubt, an offer to sell drugs . . . is both a 'substantial step' and an 'overt act' in the attempted sale of a controlled substance."); *United States v. Melvin*, 628 F. App'x 774, 777 (1st Cir. 2015) ("A bona fide offer [to sell] comprises both the intent and substantial step necessary to constitute an attempted distribution of a controlled substance."); *Berroa v. Att'y Gen. of U.S.*, 523 F. App'x 913, 918 (3d Cir. 2013) (per curiam) ("[E]ven if Berroa did no more than offer to sell crack cocaine . . . the state offense would be conduct punishable as a federal felony under the CSA, thus rendering it an aggravated felony under the INA.").

[22] *See United States v. Mandujano*, 499 F.2d 370, 379 (5th Cir. 1974) (concluding that "the *request for* and the *receipt of* the $650.00 . . . constituted a substantial step toward distribution of heroin" (emphases added)).

No. 19-60519

First, *Rivera-Sanchez* apparently treated solicitation as mutually exclusive from attempt. *Id.* But there is significant overlap between solicitation and attempt crimes.[23] Thus, the ability to characterize an offer to sell as solicitation does not negate the possibility that, with the requisite *mens rea*, it could also constitute attempt. Second, *Rivera-Sanchez*'s solicitation theory makes little sense in the context of § 481.112. Solicitation consists of "urging, advising, commanding, or otherwise inciting *another to commit a crime*." *Solicitation*, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added). But an offer to sell wouldn't constitute solicitation of a violation of § 481.112: True, an offer to sell might solicit the buyer to *purchase* or *possess* a controlled substance. But § 481.112 criminalizes "[m]anufacture or [d]elivery," not possession or purchase. Thus, a defendant's offer to sell would not constitute solicitation of delivery of a controlled substance, because it would be the defendant—not the solicited person—who would prospectively be delivering the drugs.

In short, § 481.112's offer-to-sell theory requires (1) the requisite culpability and (2) a substantial step. It thus falls within the CSA's definition of an attempted transfer.

The petition for review is DENIED.

---

[23] *See* 2 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 11.1(f) (3d ed. 2017) (summarizing various views on the overlap between solicitation and attempt crimes); *see also United States v. Am. Airlines, Inc.*, 743 F.2d 1114, 1121 (5th Cir. 1984) ("[W]e reject appellee's contention that the law in 1890 clearly required more than a solicitation to constitute an attempt.").