**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1826
_____

UNITED STATES OF AMERICA

v.

DELANCEY MELVIN,
Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1:21-cr-00071-001)
U.S. District Judge:  Honorable Christopher C. Conner
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 13, 2025
_____

Before: SHWARTZ, MATEY, and FREEMAN, Circuit Judges.

(Filed: July 14, 2025)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

SHWARTZ, Circuit Judge.

Delancey Melvin appeals the District Court's order denying his suppression motion and its sentencing judgment. For the reasons set forth herein, we will affirm in part, vacate in part, and remand.

I

Pennsylvania State Trooper Jared Fluck applied for a warrant to search a residence in Franklin County, Pennsylvania, where Trooper Fluck averred Melvin was a resident. In support of the application, Trooper Fluck stated that Maryland State Trooper James Ward had contacted him about an ongoing drug trafficking investigation and relayed that a "creditable and reliable source" told Ward that Melvin: (1) was a known cocaine supplier in Hagerstown, Maryland; (2) visited Greencastle, Pennsylvania, and Hagerstown from his New York City home about one weekend per month; (3) traveled from New York to Greencastle with a "large amount" of cocaine; (4) showed the source a "black taped 'Brick' shaped object" while in the residence; (5) described the brick as his "work," which he would "turn for quick sale and profits to payoff [sic] prior debts"; (6) paid $43,000 for the brick; and (7) stored the brick in the kitchen of the Franklin County residence. App. 35.

A state magistrate granted the search warrant application. During the search, law enforcement discovered cocaine and Melvin told law enforcement that he had brought the drugs from New York the day prior and had come to Greencastle three times to sell cocaine.

2

Melvin was indicted for possession with intent to distribute cocaine in violation 21 U.S.C. § 841(a)(1). Melvin moved to suppress the drugs and his statements to law enforcement, arguing that the officers lacked probable cause to search the residence. The District Court denied the motion because it found: (1) the affidavit established a fair probability that contraband would be found at the residence; (2) a magistrate could conclude that the source was sufficiently reliable because (a) the source knew specific information about Melvin's drug-dealing operations and (b) this information was corroborated by law enforcement's knowledge of Melvin's drug activity; and (3) even if the warrant lacked probable cause, the good faith exception applied because a reasonable officer would believe that probable cause supported the warrant. United States v. Melvin, No. 1:21-cr-71, 2022 WL 710187, at *3-5 (M.D. Pa. Mar. 9, 2022). Melvin thereafter pleaded guilty to the drug charge conditioned on his right to appeal the suppression order.

At sentencing, the District Court concluded that Melvin was a "career offender" under U.S.S.G. § 4B1.1(b)(3) because his instant conviction was for a "controlled substance offense" under § 4B1.2(b) and he had three prior drug convictions under New York law that counted as qualifying career-offender offenses. The Court calculated an offense level of twenty-nine and a criminal history category of VI, resulting in a Guidelines range of 151 to 188 months' imprisonment.

Melvin requested a downward variance to a range of 84 to 105 months' imprisonment. The District Court varied downward and sentenced Melvin to 140 months' imprisonment after considering Melvin's (1) nine adult convictions, (2) past recidivism, (3) commitment to parenting, rehabilitation, and not reoffending, (4)

3

employment, (5) character letters, (6) difficult upbringing, and (7) age.  The Court

acknowledged that Melvin's criminal history was non-violent,[1] but noted that drug-

dealing is itself a destructive crime.  It also considered the Sentencing Commission's data

for sentences imposed on drug offenders like Melvin and concluded its sentence was not

significantly different from those imposed upon others similarly charged.

Melvin appeals.

## II[2]

We address Melvin's suppression and sentencing arguments in turn.

## A[3]

A magistrate may issue a search warrant if the information in the application

provides probable cause to believe that evidence of a crime may be found at the place to

be searched.  See United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001).  When

reviewing that determination, we examine whether a substantial basis supported the

magistrate's probable cause conclusion and give it "great deference."  Illinois v. Gates,

462 U.S. 213, 236 (1983).  Even if no substantial basis existed, however, we may uphold

---

[1] Melvin noted he was a "drug trafficking only" offender with no violent predicate offenses and pointed to a Sentencing Commission study concluding that there are "clear and notable differences between drug trafficking only career offenders and those career offenders who have committed a violent offense."  App. 132, 141 (citing United States Sentencing Commission, 2016 Report to the Congress: Career Offender Enhancements, available at https://www.ussc.gov/research/congressional-reports/2016-report-congress-career-offender-enhancements).

[2] The District Court had jurisdiction under 18 U.S.C. § 3231.  We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[3] Our review of the District Court's reliance on the good faith exception is plenary. See United States v. Williams, 3 F.3d 69, 71 n.2 (3d Cir. 1993).

the order denying suppression under the good faith exception to the exclusionary rule. United States v. Leon, 468 U.S. 897, 926 (1984). If law enforcement acted in good faith in securing and executing a warrant, the evidence gathered pursuant to it will not be suppressed even if a court later concludes that the probable cause determination was erroneous. United States v. Caesar, 2 F.4th 160, 169 (3d Cir. 2021) (quoting Leon, 468 U.S. at 922). A "warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search," United States v. Zimmerman, 277 F.3d 426, 436 (3d Cir. 2002) (internal quotation marks omitted), and typically "will obviate the need for any deep inquiry into [the] reasonableness of the officer's reliance on the warrant," Caesar, 2 F.4th at 170 (alteration in original) (internal quotation marks omitted).

Melvin asserts that the good faith exception does not apply because "the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Appellant's Br. 27 (quoting Zimmerman, 277 F.3d at 437). To succeed on this argument, Melvin must show that the affidavit was a "bare bones" document that contained no indicia of probable cause to support the magistrate's finding. See Hodge, 246 F.3d at 309. Melvin fails to meet his burden because the affidavit stated, among other things, that he was involved in drug trafficking, had transported drugs from New York that he intended to sell, regularly traveled to Greencastle and Hagerstown, was a known supplier of cocaine, and, on the day of the search, was storing drugs at the residence. Further, the source provided a first-hand account of Melvin's activities and the presence of drugs at the residence on the day the

warrant was sought. Thus, the affidavit is not so "lacking in indicia of probable cause" that no reasonable officer would believe it to be valid. See id. Therefore, the good faith exception applies, and the District Court properly denied the suppression motion.

### B[4]

We next consider whether the District Court erred in sentencing Melvin as a career offender under the Sentencing Guidelines. For Melvin to be designated a career offender, he must have been at least 18 years old at the time of the instant offense, the instant offense must be a controlled substance offense, and he must have had two prior convictions that are controlled substance offenses as defined under the applicable career offender Guidelines provision, U.S.S.G. § 4B1.1.[5] To determine whether Melvin's prior convictions constitute controlled substance offenses, we compare the meaning of a controlled substance offense under the 2018 Guidelines with the elements of Melvin's statutes of conviction, N.Y.P.L. §§ 220.34 and 220.39. See United States v. Dawson, 32 F.4th 254, 260 (3d Cir. 2022).

---

[4] Although this is a procedural reasonableness challenge, and we review claims of procedural reasonableness for abuse of discretion, see United States v. Tomko, 562 F.3d 558, 567 (3d Cir. 2009) (en banc), "[w]e exercise plenary review over a [d]istrict [c]ourt's determination that an offense constituted a controlled substance offense for purposes of determining career offender status under U.S.S.G. § 4B1.1," United States v. Shabazz, 233 F.3d 730, 731 (3d Cir. 2000).

[5] The Ex Post Facto Clause, U.S. Const. art. I, § 9, cl. 3, requires us to apply the 2018 Guidelines, which were in effect when Melvin committed the 2020 offense of conviction because the definition of controlled substance offense in the Guidelines in effect at the time of his 2024 sentencing encompassed a broader range of conduct, and thus could have resulted in a harsher sentence than the 2018 Guidelines. See U.S.S.G. §§ 1B1.11(a), (b)(1), 4B1.2(d) (2023); U.S.S.G. § 1B1.11(a), (b)(1) (2018); United States v. Larkin, 629 F.3d 177, 193 (3d Cir. 2010).

The Guidelines define a controlled substance offense, as relevant here, as an "offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the . . . distribution[] or dispensing of a controlled substance." U.S.S.G. § 4B1.2(b). Because the Guidelines do not include a definition of distribution or dispensing, we look to dictionaries.[6]

Black's Law Dictionary defines distribution to mean "giving out or division among a number, sharing or parceling out, allotting, dispensing, apportioning." Dawson, 32 F.4th at 261 (quoting Distribution, Black's Law Dictionary (6th ed. 1990)).[7] We may also consider definitions contained in the relevant statute. Id. at 263. The Controlled Substances Act ("CSA") defines distribute as "deliver (other than by administering or dispensing) a controlled substance," and defines deliver as "the actual, constructive, or attempted transfer of a controlled substance . . . ." 21 U.S.C. § 802(8), (11). In the drug context, deliver means the "actual, constructive, or attempted transfer" of a controlled substance to another. Dawson, 32 F.4th at 262 (quoting Delivery, Black's Law Dictionary (6th ed. 1990)) (emphasis omitted).[8] In Dawson, we concluded that distribution in the Guidelines' definition of "controlled substance offense" included

---

[6] Under United States v. Nasir, we consider the Guidelines commentary to interpret a Guidelines provision only when the plain text of the provision itself "is genuinely ambiguous." 17 F.4th 459, 471 (3d Cir. 2021) (en banc) (quoting Kisor v. Wilkie, 588 U.S. 558, 575 (2019)). Because the controlled substance offense language in this provision is not genuinely ambiguous, we do not consider the commentary.

[7] See also Distribution, Oxford English Dictionary (2d ed. 1989) ("The action of dividing and dealing out or bestowing in portions among a number of recipients; apportionment, allotment.").

[8] See also Deliver, Oxford English Dictionary (2d ed. 1989) ("To hand over, transfer, commit to another's possession or keeping.").

"attempted transfer," which refers to a situation where the defendant sought to deliver drugs to an intended recipient, but the success of that act was interrupted by an intervening event, such as the interception of the package by someone other than the intended recipient or an arrest before the drugs are handed off.  32 F.4th at 262.

Dispense means "weigh out, pay out, distribute, regulate, manage, control." Dispense, Black's Law Dictionary (6th ed. 1990).[9]  The CSA defines dispense to mean "deliver a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner, including the prescribing and administering of a controlled substance and the packaging, labeling or compounding necessary to prepare the substance for such delivery."  21 U.S.C. § 802(10). As these definitions demonstrate, dispensing also requires an act to effectuate a delivery even if that delivery to the intended recipient is not successful.

Melvin's statutes of prior conviction criminalize the knowing and unlawful sale of a narcotic preparation, N.Y.P.L. § 220.34, or a narcotic drug, id. § 220.39.  Under these state statutes, the term sell means "to sell, exchange, give or dispose of to another, or to offer or agree to do the same."[10]  Id. § 220.00(1).  Offers to sell under these statutes

_____

[9] See also Dispense, Oxford English Dictionary (2d ed. 1989) ("To mete out, deal out, distribute; to bestow in portions or from a general stock.").

[10] This definition of sell first appears in the 1965 version of the statute.  1965 N.Y. Laws 2440-41.  Dictionary definitions at the time define offer, in the criminal context, as "mak[ing] an effort to effect some object, as, to offer to bribe."  Offer, Black's Law Dictionary (4th rev. ed. 1968).  Additionally, Black's Law Dictionary defines offer to sell as "merely contemplat[ing] the proffer, proposal, presentation, or exhibition of something to another for acceptance or rejection," Offer, Black's Law Dictionary (4th rev. ed. 1968), but this definition differs from offer to sell under N.Y.P.L. §§ 220.34, 220.39, and

include "an offer or agreement to sell even if actual delivery does not occur, provided

that, at the time of the offer or agreement, the person has the intent and ability to make

the sale." Model Jury Instructions, Criminal Sale of a Controlled Substance in the Third

Degree, Penal Law 220.39(1) (New York State Unified Court System Committee on

Criminal Jury Instructions 1979, rev. 2003);[11] People v. Samuels, 99 N.Y.2d 20, 24

(2002). A defendant who has the "intent and ability" to make the sale he offers violates

the New York statutes even if he did not engage in the act of distribution, delivery, or

transfer (actual or attempted as contemplated in Dawson).[12]

Accordingly, because New York's offer to sell law criminalizes conduct not

encompassed within the definitions of "distribution" and "dispensing" under the 2018

Guidelines, Melvin's New York convictions do not qualify as predicate offenses under

---

220.00(1), which require the offer to be bona fide. See United States v. Bryant, 571 F.3d 147, 157-58 (1st Cir. 2009) (distinguishing bona fide offers from mere offers).

[11] See also Model Jury Instructions, Criminal Sale of a Controlled Substance in the Fourth Degree, Penal Law 220.34(1) (New York State Unified Court System Committee on Criminal Jury Instructions 1979, rev. 2003).

[12] Some courts have concluded, in the immigration context, that an offer to sell a controlled substance is "a substantial step towards committing the crime of distributing a controlled substance," because such an act is "perpetrated in furtherance of a sale, typically as part of the negotiation for the price and quantity." E.g., Ochoa-Salgado v. Garland, 5 F.4th 615, 621-22 (5th Cir. 2021) ("Thus, an offer to sell under [the relevant state law] constitutes attempted delivery under the CSA."); see also Pascual v. Holder, 723 F.3d 156, 159 (2d Cir. 2013). These observations were made in the context of whether these state convictions were drug trafficking crimes under immigration laws, 8 U.S.C. §§ 1101(a)(43)(B); 1227(a)(2)(A)(iii), and did not address whether the offer to sell offense was a controlled substance offense under the 2018 Guidelines.

The Government's reliance on cases that conclude that an offer to sell is a controlled substance offense for career offender purposes is misplaced as those cases predate Nasir or are from Courts of Appeal not bound by Nasir.

the career offender Guidelines provision.  Therefore, we will vacate his sentence and remand to the District Court to sentence him without applying § 4B1.1.[13]

III

For the foregoing reasons, we will affirm in part, vacate in part, and remand.

---

[13] Because we will vacate Melvin's sentence, we need not decide whether the District Court failed to consider the need for its sentence to avoid unwarranted disparities.