RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0098p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

JOSE YANEL SANCHEZ-PEREZ,

                              *Petitioner*,

    *v.*

MERRICK B. GARLAND, Attorney General,

                              *Respondent*.

No. 23-3004

───────────────

On Petition for Review from the Board of Immigration Appeals.
No. A 028 650 559.

Decided and Filed:  April 30, 2024

Before:  BOGGS, MOORE, and GIBBONS, Circuit Judges.

───────────────

**COUNSEL**

**ON BRIEF:**  William Patrick York, II, OZMENT LAW, PLC, Nashville, Tennessee, for Petitioner.  Dana M. Camilleri, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

───────────────

**OPINION**

───────────────

KAREN NELSON MOORE, Circuit Judge.  One day after he pleaded guilty to violating a Tennessee domestic-violence law, the federal government initiated removal proceedings against Jose Yanel Sanchez-Perez.  Ultimately, an immigration judge and the Board of Immigration Appeals determined that Sanchez-Perez could not seek cancellation of removal due to this conviction.  The Board of Immigration Appeals improperly determined that

Sanchez-Perez pleaded guilty to a crime of violence, however.  Accordingly, we **GRANT** Sanchez-Perez's petition for review, **VACATE** the Board's order of removal, and **REMAND** to the Board for proceedings consistent with our opinion.

## I.  BACKGROUND

Sanchez-Perez is a native and citizen of El Salvador who first entered the United States in 1998.  A.R. at 3 (December 5, 2022 BIA Dec. at 1); *id.* at 1155 (July 24, 2015 I.J. Dec. at 2).  On August 14, 2009, Sanchez-Perez pleaded guilty to committing misdemeanor domestic assault under Tennessee Code Annotated § 39-13-111.  *Id.* at 553 (Disposition).  The Department of Homeland Security initiated removal proceedings against Sanchez-Perez the next day.  *Id.* at 1506–08 (Not. to Appear).

Sanchez-Perez's removal proceedings have played out at multiple hearings over the ensuing years.  Many of these proceedings and the legal issues addressed therein are irrelevant to the instant case.  Relevant here, in July 2015, an immigration judge found that Sanchez-Perez was ineligible for cancellation of removal because he failed to establish that he had been continuously present in the United States for ten years prior to receiving the notice to appear.  *Id.* at 1164 (July 24, 2015 I.J. Dec. at 11).  Notwithstanding this finding, the immigration judge also found that Sanchez-Perez was not statutorily barred from seeking cancellation of removal due to his 2009 domestic-violence conviction, *id.* at 1165 (July 24, 2015 I.J. Dec. at 12); that Sanchez-Perez had exhibited good moral character despite the conviction, *id.* at 1165–66 (July 24, 2015 I.J. Dec. at 12–13); and that his removal would cause "exceptional and extremely unusual hardship" for his family, *id.* at 1166–68 (July 24, 2015 I.J. Dec. at 13–15).  The Board of Immigration Appeals ("BIA") dismissed Sanchez-Perez's appeal and agreed with the immigration judge's findings that Sanchez-Perez lacked the requisite continuous physical presence and thus was not eligible for cancellation of removal.  *Id.* at 1112–13 (July 6, 2016 BIA Dec. at 1–2).

Following the BIA's decision, Sanchez-Perez filed a motion to reopen on September 2, 2016.  *Id.* at 1062 (Mot. to Reopen at 1).  Sanchez-Perez argued that new evidence in the form of letters from employers established that he had been continuously in the United States since his

arrival. *Id.* at 1063–67 (Mot. to Reopen at 2–6). The BIA granted Sanchez-Perez's motion to reopen on December 14, 2016. *Id.* at 1060 (December 14, 2016 BIA Dec. at 1).

On remand, at a February 8, 2018 hearing, Sanchez-Perez raised for the first time that he intended to file an application for special-rule cancellation of removal as a battered spouse under the Violence Against Women Act. *Id.* at 217–18 (February 8, 2018 Tr. at 77:10–78:5). The government argued for the first time that Sanchez-Perez was statutorily barred from seeking cancellation of removal or special-rule cancellation of removal due to his 2009 domestic-violence conviction. *Id.* at 232–33 (February 8, 2018 Tr. at 92:22–93:21) (contending that intervening judicial authority established that Sanchez-Perez's conviction was for a crime of violence).

On March 20, 2018, the immigration judge issued a written decision denying Sanchez-Perez's applications for cancellation of removal and special-rule cancellation of removal. *Id.* at 114 (March 20, 2018 I.J. Dec.). Relevant here, the immigration judge found that Sanchez-Perez's 2009 conviction is categorically a crime of violence, and thus Sanchez-Perez was statutorily barred from obtaining cancellation of removal. *Id.* at 119–22 (March 20, 2018 I.J. Dec. at 6–9). The immigration judge justified reconsidering her prior determination regarding the statutory bar because intervening Sixth Circuit and Supreme Court law purportedly established that "cases of domestic violence involving fear of bodily injury, due to the special volatile and dangerous conditions in a domestic dispute do qualify as crimes of violence." *Id.* at 122 (March 20, 2018 I.J. Dec. at 9) (citing, *inter alia*, *United States v. Morris*, 885 F.3d 405, 413 (6th Cir. 2018) (holding that a Michigan domestic-violence statute is categorically a crime of violence under the residual clause of the guidelines because "[i]n the context of a face-to-face incident of domestic violence, there is a risk of physical injury")). The immigration judge did not extensively consider the at-issue Tennessee statute's language or the specific statutory definitions applicable to certain of the elements of Sanchez-Perez's crime.

The BIA dismissed Sanchez-Perez's appeal from this decision. The BIA upheld the immigration judge's decision on one ground: that Sanchez-Perez's 2009 conviction was categorically a crime of violence, and thus Sanchez-Perez was statutorily barred from obtaining cancellation of removal. *Id.* at 6 (December 5, 2022 BIA Dec. at 4). The BIA correctly laid out

the governing legal standards, explaining that under the Immigration and Nationality Act ("INA"), a noncitizen is barred from obtaining cancellation of removal if convicted of a domestic-violence offense only if the offense categorically fits the federal definition of a crime of violence. *Id.* at 4 (December 5, 2022 BIA Dec. at 2) (citing *Matter of Velasquez*, 25 I. & N. Dec. 278, 283 (BIA 2010) (explaining that under the INA, "a crime of domestic violence means any crime of violence" that categorically requires the use or threatened use of "violent force")). The BIA then discussed the Supreme Court's decision in *United States v. Castleman*, in which the Court held that "the common law definition of 'force,' which is 'satisfied even by the slightest offensive touching,' applies to misdemeanor crimes of domestic violence" under 18 U.S.C. § 921(a)(33)(A). *Id.* at 5 (December 5, 2022 BIA Dec. at 3) (quoting 572 U.S. 157, 163 (2014) (internal quotation marks omitted)). The BIA then considered the Tennessee statute at issue in this case, including its definitions section, and found that the crime for which Sanchez-Perez was convicted is categorically a crime of violence "because all of [the types of bodily injury under the statute] involve a use of force capable of causing physical pain or injury to another person." *Id.* Finally, the BIA rejected Sanchez-Perez's contention that the immigration judge erred by revisiting her prior decision regarding the statutory bar, holding the law-of-the-case doctrine to be inapplicable. *Id.* at 6 (December 5, 2022 BIA Dec. at 4). Sanchez-Perez timely filed this petition for review following the BIA's decision. DE 1-2 (Pet. for Review).

## II. DISCUSSION

Sanchez-Perez argues that the BIA erred in three distinct ways by finding that he is statutorily barred from obtaining cancellation of removal. First, Sanchez-Perez contends that the BIA improperly applied the categorical approach in determining that his 2009 Tennessee conviction is a crime of violence. Pet. Br. at 10–18. Second, he argues that the BIA should have reversed the immigration judge for not adhering to the law of the case. *Id.* at 19–34. Third, he contends that the BIA failed to consider differences between the statutory bar for cancellation of removal and the bar applicable to special-rule cancellation of removal. *Id.* at 34–39. Because Sanchez-Perez is correct that the crime for which he was convicted in 2009 is not categorically a crime of violence, we grant his petition and vacate the BIA's decision on that ground.

## A.  Standard of Review

"Where the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, we review the BIA's decision as the final agency determination."  *Raja v. Sessions*, 900 F.3d 823, 826–27 (6th Cir. 2018) (quoting *Shaya v. Holder*, 586 F.3d 401, 405 (6th Cir. 2009)).  We review de novo the BIA's decisions on questions of law.  *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009).

## B.  Crimes of Violence Under Section 16 of Title 18

Under the INA, noncitizens may not receive cancellation of removal if they have been convicted of certain crimes.  8 U.S.C. § 1229b(b)(1)(C).  One such crime is a "crime of domestic violence," which "means any crime of violence (as defined in section 16 of Title 18) against a person committed by" someone with whom they are in certain types of domestic relationships.  8 U.S.C. § 1227(a)(2)(E)(i).  Section 16 of Title 18, in turn, defines a "crime of violence" as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 16(a).[1]

To determine whether a prior conviction is a crime of violence, we "engag[e] in a categorical-approach analysis."  *Harris v. United States*, 19 F.4th 863, 869 (6th Cir. 2021) (citing *Taylor v. United States*, 495 U.S. 575, 602 (1990)).  Under this approach, we are limited to considering "the statutory definition of the offense, rather than the manner in which an offender may have violated the statute in a particular circumstance."  *United States v. Rafidi*, 829 F.3d 437, 444 (6th Cir. 2016) (quoting *United States v. Denson*, 728 F.3d 603, 607 (6th Cir. 2013)).  Put differently, a prior conviction is a crime of violence only if the defendant "*must have used*, attempted to use, or threatened to use physical force against the person of another *in order to have been convicted*, not whether the particular defendant *actually* used, attempted to use, or threatened to use physical force against the person of another *in that particular case*."  *United States v. Burris*, 912 F.3d 386, 392 (6th Cir. 2019) (lead opinion) (en banc).  For these purposes,

---

[1]In *Sessions v. Dimaya*, the Supreme Court held that the residual clause of this section, section 16(b), is unconstitutionally vague.  584 U.S. 148, 174–75 (2018); *see also Johnson v. United States*, 576 U.S. 591, 606 (2015) (holding that a similarly worded residual clause in the Armed Career Criminal Act is unconstitutionally vague).

"'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010); *see also id.* (explaining that "crime of violence" as used in 18 U.S.C. § 16 "suggests a category of violent, active crimes" (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004)); *Banuelos-Jimenez v. Garland*, 67 F.4th 806, 808 (6th Cir. 2023) ( "a crime of domestic violence" under the INA must involve "*violent* force—that is, force capable of causing physical pain or injury to another person" (quoting *Johnson*, 559 U.S. at 140)); *Matter of Dang*, 28 I. & N. Dec. 541, 547–48 (BIA 2022) (holding that the meaning of "physical force" in 18 U.S.C. § 16(a) is controlled by *Johnson*).

If the elements of a criminal statute are narrower than or match the relevant federal definition of a crime of violence—that is, if the statute criminalizes the same conduct or less conduct than the federal definition—the crime is categorically a crime of violence. *See, e.g.*, *Cradler v. United States*, 891 F.3d 659, 667 (6th Cir. 2018).**[2]** But if the relevant criminal statute sweeps more broadly and criminalizes conduct that does not necessarily involve the use, attempted use, or threated use of physical force, any conviction under the statute does not qualify as a crime of violence. *Id.* ("Statutes that criminalize more conduct than the [federal] definition of [crimes of violence] are sometimes described as being 'broader' than the [federal definition], resulting in the use of shorthand monikers for them, including 'overbroad,' 'too-broad,' or 'non-generic' statutes."). When assessing whether a state statute is overbroad vis-à-vis the federal definition, "our focus on the minimum conduct criminalized by the state statute is not an invitation to apply 'legal imagination' to the state offense; there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the [federal] definition of a crime.'" *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).

## C. Sanchez-Perez's Conviction is Not Categorically a Crime of Violence

Sanchez-Perez argues first and foremost that the BIA erred when it determined that his 2009 Tennessee conviction categorically fit the federal definition of a crime of violence,

---

**[2]**The government has not argued, and the BIA did not hold, that the relevant Tennessee statute is divisible such that we would apply the modified categorical approach.

rendering him statutorily ineligible for cancellation of removal. We agree. Because the Tennessee statute at issue, Tenn. Code Ann. § 39-13-101(a)(2), criminalizes conduct beyond the federal definition of a crime of violence, the BIA erred in finding that Sanchez-Perez is statutorily barred from seeking cancellation of removal.

Sanchez-Perez pleaded guilty to a misdemeanor domestic assault under Tennessee Code Annotated § 39-13-111. Under the statute, "[a] person commits domestic assault who commits an assault as defined in § 39-13-101 against a domestic abuse victim." Tenn. Code Ann. § 39-13-111(b). Accordingly, we must look to the cross-referenced general assault statute to determine the elements of the relevant crime. Section 39-13-101(a)(2) states that "[a] person commits assault who . . . [i]ntentionally or knowingly causes another to reasonably fear imminent *bodily injury*." (emphasis added).[3] If the statute ended there, the result might be different. "Bodily injury," however, has a statutory definition in Tennessee. That is, we do not simply apply the ordinary meaning of that phrase, but instead we look to the statute for its meaning. *See Burris*, 912 F.3d at 397 (lead opinion) (looking to statutory definition, not common meaning, to define term for categorical approach purposes).[4] Under the Tennessee statute, "'[b]odily injury' includes a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or *mental faculty*." Tenn. Code Ann. § 39-11-106(a)(3) (emphasis added). Read together, the relevant Tennessee law criminalizes "[i]ntentionally or knowingly caus[ing] another to reasonably fear [an] imminent [cut, abrasion, bruise, burn or disfigurement, [] physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty]." Tenn. Code Ann. §§ 39-13-101(a)(2), 39-11-106(a)(3).

---

[3]The parties agree that Sanchez-Perez was convicted based on Tennessee Code Annotated § 39-13-101(a)(2). Resp. Br. at 22–23; Pet. Br. at 12.

[4]This discussion and the *Burris* lead opinion's discussion of how the two at-issue Ohio statutes are not categorically crimes of violence reflect the majority opinion of the court. *See United States v. Burris*, 912 F.3d 386, 395–400 (6th Cir. 2019) (lead opinion) (en banc) (explaining that *United States v. Anderson*, 695 F.3d 390 (6th Cir. 2012), was wrongly decided because Ohio's felonious-assault and aggravated-assault statutes are not categorically crimes of violence); *id.* at 411 (Cole, J., concurring in part and dissenting in part) ("While I concur in the lead opinion's holding that *Anderson* was wrongly decided and should be overruled, my agreement ends there.").

On its face, this statute plainly criminalizes conduct that does not constitute a crime of violence. Because the INA defines a crime of domestic violence to be a "crime of violence" within the meaning of 18 U.S.C. § 16(a), *see* 8 U.S.C. § 1227(a)(2)(E)(i), we know that the crime for which Sanchez-Perez was convicted must involve "*violent* force" to categorically meet the federal definition. *Banuelos-Jimenez*, 67 F.4th at 808 (quoting *Johnson*, 559 U.S. at 140). But the Tennessee definition of "bodily injury" more broadly includes mental harms, and a defendant can commit assault by intentionally causing a victim to fear mental harm or impairment of cognitive function. Tenn. Code Ann. §§ 39-13-101(a)(2), 39-11-106(a)(3). One could plausibly cause such harm without using or threatening violent physical force—"that is, force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140. And by pointing out that possibility based on the text and application of the statutory definition, Sanchez-Perez has shown that his crime is not categorically a crime of violence. Accordingly, the Tennessee law sweeps too broadly to make a conviction thereof a crime of violence for immigration-law purposes.

What is more, we have already addressed an Ohio statutory scheme nearly identical to the Tennessee statute at issue here, and we have held that the crimes enumerated in that Ohio scheme are not categorically crimes of violence. In *United States v. Burris*, our en banc court considered whether Ohio felonious-assault and aggravated-assault statutes criminalizing, "among other things, 'knowingly . . . [c]aus[ing] serious physical harm to another'" were categorically crimes of violence given that Ohio law defined "serious physical harm" to include "[a]ny mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment." 912 F.3d at 397 (lead opinion) (quoting Ohio Rev. Code §§ 2903.11(A)(1), 2903.12(A)(1), 2901.01(A)(5)(a)). Because "[o]n their faces . . . both statutes appear to criminalize more conduct than" would require the use of violent physical force, the state offenses are too broad to be categorically crimes of violence. *Id.* (lead opinion); *see also id.* at 402 (lead opinion) ("[B]ecause that statutory definition includes certain serious mental harms, and because state courts in fact do apply the statute to conduct that does not involve the use, attempted use, or threatened use of physical force against the person of another," the crimes are

not categorically crimes of violence.).**5** As in *Burris*, Sanchez-Perez was convicted of an offense for which mental harms can satisfy the statute's definition of bodily injury, indicating that his offense was not categorically a crime of violence.

Tennessee caselaw confirms that the relevant statute is not categorically a crime of violence. As in *Burris*, several Tennessee cases addressing convictions based on sexual assaults demonstrate that bodily injury under Tennessee law does not *require* the use or threatened use of violent force. *See Burris*, 912 F.3d at 398–99 (lead opinion) (discussing series of cases concerning sexual assaults and other traumas in which defendants did not utilize violent physical force but nonetheless inflicted mental harms on victims, and explaining that all that is required under the Ohio statute is that "defendants knowingly cause (by whatever means) the serious mental harms included in Ohio's statutory definition of 'serious physical harm'"). For example, in *State v. McClellan*, a defendant was convicted of sexually assaulting his daughter. No. E2010-02338-CCA-R3-CD, 2012 WL 2356487, at *1 (Tenn. Crim. App. June 21, 2012). In arguing against a sentencing enhancement, the defendant contended that the fact that the rape "neither caused nor threatened serious bodily injury" was a mitigating factor. *Id.* at *6 (quoting Tenn. Code Ann. § 40–35–113(1) (1994)). Relevant here, the Tennessee court found, applying a long line of Tennessee caselaw, that because the rape caused mental harm, the defendant's conduct caused "serious bodily injury" under the statute. *Id.***6** *McClellan* is not alone in this regard. *See, e.g.*, *State v. Thompson*, No. M2003-00487-CCA-R3-CD, 2004 WL 2964704, at *19 (Tenn. Crim. App. Dec. 20, 2004) (explaining that "serious bodily injury" under Tennessee law "also includes a mental element" and that in part because rapes of young victims "necessarily include[] mental anguish and suffering," defendant imposed such injury on victims);

---

**5***Burris* then went on to hold that the statutes are divisible under the modified categorical approach. 912 F.3d at 406 (lead opinion). As mentioned, the government has not argued that the Tennessee statute is divisible.

**6**Tennessee law defines "*serious* bodily injury" to include "[p]rotracted loss or *substantial* impairment of a function of a bodily member, organ or mental faculty." Tenn. Code Ann. § 39-11-106(37)(E) (emphases added). The instant case requires examining Tennessee's statutory definition of "bodily injury," which includes "*temporary* illness or impairment of the function of a bodily member, organ, or mental faculty." Tenn. Code Ann. § 39-11-106(a)(3) (emphasis added). Given the similarity in these definitions, the former simply appearing more severe than the latter, we see no reason not to look to cases analyzing Tenn. Code Ann. § 39-11-106(37)(E). Further, if it is the case that Tennessee courts find that some mental harms can constitute serious bodily injuries, surely the same would be true to satisfy the lower threshold of non-serious bodily injuries.

*State v. Price*, No. E2000-00441-CCA-R3-CD, 2001 WL 1464555, at *2 (Tenn. Crim. App. Nov. 19, 2001) (defendant's rape of young victim caused "mental impairment" and victim "underwent extended counseling and has difficulty coping with normal activities," meaning that defendant caused mental harms within the meaning of "serious bodily injury"). Because Tennessee law allows mental harms to satisfy the "bodily injury" language of the statute, Sanchez-Perez's conviction did not necessarily require the use of violent force, meaning it is not a crime of violence. Tennessee caselaw makes clear that there is a realistic possibility that Sanchez-Perez could have been convicted without using or threatening to use physical force.

The government makes two main arguments for why Sanchez-Perez was convicted of a crime of violence as understood within 18 U.S.C. § 16. Neither has merit. First, the government invokes *Castleman* to argue in favor of effectively lowering the threshold for what constitutes a crime of violence under 18 U.S.C. § 16. But *Castleman* explicitly clarifies that its rule *does not apply* to 18 U.S.C. § 16, the federal definition at issue here. 572 U.S. at 164 n.4 (explaining that "domestic violence" has a particular meaning that "encompasses a range of force broader than that which constitutes 'violence' *simpliciter*" and that 18 U.S.C. § 16 employs the ordinary use of a "crime of violence," meaning "a category of violent, active crimes" (quoting *Johnson*, 559 U.S. at 140)); *see also, e.g.*, *Dang*, 28 I. & N. Dec. at 547–48. Presumably, the government seizes on the fact that both the INA and the statute at issue in *Castleman*, 18 U.S.C. § 921(a)(33)(A), refer to "domestic violence." Although the INA makes noncitizens ineligible for cancellation of removal if they commit a crime of domestic violence, the INA makes the definition of a crime of domestic violence within this section of the statute coterminous with the meaning of crime of violence in 18 U.S.C. § 16. 8 U.S.C. § 1227(a)(2)(E)(i). As discussed throughout this opinion, section 16's "crime of violence" requires the use or threat of "*violent* force," *Johnson*, 559 U.S. at 140, not force that would meet the common-law definition capable of satisfying the elements of a misdemeanor crime of domestic violence in 18 U.S.C. § 921(a)(33)(A), *Castleman*, 572 U.S. at 164 n.4. The relevant inquiry is not determining what

"domestic violence" means as the government seems to suggest. The INA does that for us. It tells us that the relevant crime must fit *Johnson*'s strictures, not *Castleman*'s.**[7]**

Because *Castleman* does not control, the fact that it discusses the same Tennessee statute at issue here is largely irrelevant. *Castleman* itself explains that the Court was not deciding whether the forms of bodily injury under the Tennessee statute would meet *Johnson*'s higher threshold. *Castleman*, 572 U.S. at 170. That the forms of injury required by the Tennessee statute "necessitate force *in the common-law sense*," simply does not matter here, because we know that section 16 requires *violent* force, not just, for instance, offensive touching. *Id.* (emphasis added). *Burris*, not *Castleman*, thus controls this case and requires ruling in favor of Sanchez-Perez.

Second, the government's proffered cases are easily distinguishable because they address markedly different statutory language. The government does not even cite, let alone discuss, our en banc decision in *Burris*, despite Sanchez-Perez's reliance on the decision and the similarity between the Ohio statute at issue there and the Tennessee statute at issue here. More basically, all of the government's proffered cases involve statutes that do not include mental harms as qualifying bodily injuries or physical harms. *See, e.g.*, *Banuelos-Jimenez*, 67 F.4th at 809 (Arkansas statute prohibits "purposely creat[ing] apprehension of imminent physical injury to a family or household member" but does not include mental harms as "imminent physical injur[ies]"); *United States v. Verwiebe*, 874 F.3d 258, 261 (6th Cir. 2017) (committing "[a]ssault with a dangerous weapon, with intent to do bodily harm" is a crime of violence because "it proscribes common law assault with a dangerous weapon, not simple common law assault"), *abrogated on other grounds by Borden v. United States*, 593 U.S. 420 (2021); *United States v. Gatson*, 776 F.3d 405, 410–11 (6th Cir. 2015) (Ohio domestic-violence conviction is a crime of violence because Ohio statute defines "physical harm" as "any injury, illness, or other

---

**[7]**This dichotomy also elucidates the basic errors in the immigration judge's and BIA's consideration of whether the Tennessee statute is categorically a crime of violence. Although the BIA explicitly noted that a crime of domestic violence under the INA must meet section 16(a)'s definition of a crime of violence, which requires the use of violent physical force, it went on to suggest that *Castleman* lowered the bar when domestic violence is at issue. A.R. at 4–5 (December 5, 2022 BIA Dec. at 2–3). As discussed, it simply does not matter that Sanchez-Perez's conviction pertained to domestic violence, because the INA makes a crime of domestic violence for purposes of the statutory bar coterminous with *Johnson*'s definition of a crime of violence, which requires violent physical force.

*physiological* impairment, regardless of its gravity or duration" (quoting Ohio Rev. Code § 2901.01(A)(3)) (emphasis added))). Indeed, the government's reliance on our cases, including *Gatson*, that concern Ohio Revised Code § 2919.25 is misplaced. Ohio Revised Code § 2919.25 uses the phrase "physical harm," which by its statutory definition "does *not* include any mental harms." *Hernandez-Maldonado v. Barr*, 773 F. App'x 280, 287 (6th Cir. 2019). By contrast, *Burris* held that Ohio statutes utilizing the phrase "serious physical harm," which has a statutory definition that sweeps in "serious mental harms," are overbroad as a categorical matter. *Id.* at 286–87 (quoting *Burris*, 912 F.3d at 402 (lead opinion)).**[8]**

The government's and BIA's errors in this case involve basic misreading of both our and the Supreme Court's precedents concerning the distinctions between different federal statutory schemes and the meaningful differences among state criminal statutes. At bottom, because on its face the Tennessee statute at issue here criminalizes conduct that does not require the use or threatened use of violent physical force, the BIA erred when it determined that Sanchez-Perez was statutorily barred from applying for cancellation of removal by virtue of his 2009 conviction for misdemeanor domestic assault under Tennessee Code Annotated § 39-13-111.

---

**[8]**Neither party highlighted certain of our own cases that at least tangentially relate to this case. Specifically, in *Davis v. United States*, we considered whether Tennessee Code Annotated § 39-13-102(a)(1)—part of Tennessee's *aggravated*-assault statute—is a crime of violence. 900 F.3d 733, 737–738 (6th Cir. 2018). Prior to *Davis*, we held that Tennessee's reckless aggravated-assault statute, Tenn. Code Ann. 39-13-102(a)(1)(B), is likewise a crime of violence. *United States v. Harper*, 875 F.3d 329, 330 (6th Cir. 2017). Of course, this case deals with Tennessee Code Annotated § 39-13-111, Tennessee's domestic-assault statute, not Tennessee's aggravated-assault statute. In this way, *Davis* and *Harper* do not control, as their holdings appear limited to parts of the aggravated-assault statute. *See Carter v. United States*, 820 F. App'x 392, 396–97 (6th Cir. 2020) ("Binding circuit precedent holds that Tennessee reckless aggravated assault qualifies as a crime of violence under the ACCA's force clause."). Still, Tennessee's aggravated-assault statute does cross reference Tennessee Code Annotated § 39-13-101, Tennessee's *simple* assault statute, which is discussed at length in this opinion. *See* Tenn. Code Ann. § 39-13-102(a)(1). In this respect, *Davis* and *Harper* could be seen as addressing Tennessee Code Annotated § 39-13-101 in a manner that is inconsistent with this opinion. We do not believe this to be the case, because Tennessee's aggravated-assault statute still requires proof of certain aggravating conditions. In any event, as discussed in this opinion, *Burris* requires that we look to statutory definitions to determine whether a crime is categorically one of violence, and Tennessee's statutory definition of "bodily injury" sweeps too broadly, just as did the statute at issue in *Burris*. We need not opine in this case whether our caselaw analyzing Tennessee's aggravated-assault statute is consistent with our later binding en banc decision in *Burris* and its command that we take into account statutory definitions.

## III. CONCLUSION

For the foregoing reasons, we **GRANT** Sanchez-Perez's petition for review, **VACATE** the BIA's order, and **REMAND** to the BIA for proceedings consistent with our opinion.