NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0370n.06

Case No. 23-3208

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 27, 2024
KELLY L. STEPHENS, Clerk

HARMEET SINGH BAINS,

    Petitioner,

v.

MERRICK B. GARLAND, Attorney
General,

    Respondent.

)
)
)
)
)
)
)
)
)
)
)
)

ON PETITION FOR REVIEW FROM
THE UNITED STATES BOARD OF
IMMIGRATION APPEALS

OPINION

Before: GIBBONS, WHITE, and THAPAR, Circuit Judges.

GIBBONS, J., delivered the opinion of the court in which THAPAR, J., joined. THAPAR, J. (pp. 11–13), delivered a separate concurring opinion. WHITE, J. (pp. 14–20), delivered a separate dissenting opinion.

JULIA SMITH GIBBONS, Circuit Judge. Harmeet Bains was a permanent resident of the United States when he was convicted of an offense under Ohio Revised Code § 2925.22, deception to obtain dangerous drugs. Some of the offenses in that statute line up with federal prohibitions against controlled substances, but others do not. The government seeks to remove Bains, but he argues that the overbroad statute is indivisible, and that, under the categorical approach, the Immigration Judge, the Board of Immigration Appeals, and this panel cannot permissibly determine whether he committed an offense related to a federal controlled substance, and, thus, whether he is removable. We disagree. Because Ohio Revised Code § 2925.22 is divisible, and because Bains committed an offense related to a federally controlled substance, he is removable from the country. We deny his petition for review.

I.

Harmeet Bains is a native and citizen of India. At the turn of the century, Bains was admitted to the United States as a conditional permanent resident by virtue of marriage. The conditions on his residency were removed about two years later.

In May of 2003, Bains was indicted on one count of deception to obtain dangerous drugs under Ohio Revised Code ("ORC") § 2925.22. The indictment specified that the dangerous drug in question was "Hydrocodone, a Schedule III drug." AR 526, Indictment. A few months later, Bains pled guilty to an amended indictment, which denoted that the conviction was for an attempted, not completed, variation of the same offense.

At some point, Bains left the country. He later attempted to return to the United States in March of 2005, by way of Detroit, Michigan, noting his status as a returning permanent resident. On his return, an Immigration and Naturalization Service inspector then served Bains with a Notice to Appear for removal proceedings under § 212(a)(2)(A)(i)(II) of the Immigration and Nationality Act ("INA"). The notice specified that the proceeding related, in part, to Bains's controlled substance conviction from 2003. About a year later, Bains appeared before an Immigration Judge, admitted to the charges listed on the Notice to Appear, and conceded his removability. The Immigration Judge ordered Bains's deportation to India. Bains appealed the decision to the Board of Immigration Appeals ("BIA"), which sustained in part and dismissed in part the Immigration Judge's removal order. Specifically, although the BIA disagreed with one of the Immigration Judge's bases for removal, it found Bains nonetheless removable for his Hydrocodone controlled substance conviction under § 212(a)(2)(A)(i)(II) of the INA.

Several years later, in 2014, Bains moved the BIA to reopen and terminate his removal proceedings, citing a change in the law related to the determination of whether his Ohio conviction

could form the basis for his removal. Bains argued that new case law, concerning the applicability of the categorical approach to assess some state convictions, renders him no longer removable under § 212(a)(2)(A)(i)(II) of the INA because ORC § 295.22 is overbroad and indivisible. The BIA granted Bains's motion to reopen and remanded the case to an Immigration Judge. Despite Bains's new argument, the Immigration Judge found ORC § 2925.22 divisible; applied the modified categorical approach; found that Bains's conviction was for Hydrocodone, a Schedule III drug; and sustained Bains's inadmissibility while denying his motion to terminate his removal proceedings.

Bains then appealed to the BIA. He raised the same arguments before the BIA as he did before the Immigration Judge but also added, for the first time, a claim that his initial Notice to Appear from 2005 was deficient because, despite receiving an updated and sufficient Notice before the proceedings, it lacked information about the time and place of the hearing. The BIA eventually dismissed Bains's appeal. As for Bains's argument about the Notice to Appear, the BIA held that the matter was not jurisdictional and that Bains otherwise forfeited his arguments about the Notice by failing to raise them before the Immigration Judge. Regarding the question about his controlled substance conviction, the BIA followed the same steps as the Immigration Judge and held that, despite the overbroad statute, Bains was convicted of a controlled substance offense and was inadmissible and removable under § 212(a)(2)(A)(i)(II) of the INA. This appeal followed.

## II.

This court has jurisdiction to review final orders of removal of the BIA. *Madrigal v. Holder*, 572 F.3d 239, 242 (6th Cir. 2009). When the BIA issues a written opinion, this court reviews that decision. *Umana-Ramos v. Holder*, 724 F.3d 667, 670 (6th Cir. 2013) (quoting *Hachem v. Holder*, 656 F.3d 430, 437 (6th Cir. 2011)). To the extent that the BIA adopts the

Immigration Judge's reasoning, however, this court also reviews the Immigration Judge's decision. *Id.* We review questions of law de novo, but we give "substantial deference to the BIA's interpretation of the INA and accompanying regulations." *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007).

III.

This dispute primarily boils down to one question:   is ORC § 2925.22, the Ohio statute criminalizing deception to obtain a dangerous drug,[1] divisible?   After reviewing Ohio case law, the statute on its face, and how the statute is depicted in a limited set of record documents, we hold that it is and affirm the BIA's Order.

In 2003, ORC § 2925.22 stated:

(A)     No person, by deception, as defined in section 2913.01 of the Revised Code, shall procure the administration of, a prescription for, or the dispensing of, a dangerous drug or shall possess an uncompleted preprinted prescription blank used for writing a prescription for a dangerous drug.

(B)     Whoever violates this section is guilty of deception to obtain a dangerous drug.   The penalty for the offense shall be determined as follows:

(1)   If the drug involved is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, deception to obtain drugs is a felony of the fourth degree, and division (C) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.

(2)   If the drug involved is a dangerous drug or a compound, mixture, preparation, or substance included in schedule III, IV, or V or is marihuana, deception to obtain a dangerous drug is a felony of the fifth degree, and division (C) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.

Ohio Rev. Code § 2925.22 (2003).

---

[1] "Dangerous drug" is defined at Ohio Rev. Code § 4729.01(F) (2003).

## A. Divisibility

Under 8 U.S.C. § 1182(a)(2)(A)(i)(II), a noncitizen who is convicted of violating any state or federal law "relating to a controlled substance (as defined in section 802 of Title 21)" is inadmissible to the United States. An Immigration Judge found, and the BIA upheld, Bains to be removable under this provision because of his 2003 conviction for deception to obtain a dangerous drug under ORC § 2925.22. Bains argues that these decisions were improper because ORC § 2925.22 applies to a broader swath of substances than those prohibited by federal statute and that, because the Ohio statute is indivisible, his conviction cannot serve as the basis for his removal.

When determining whether a state conviction qualifies as a predicate offense relating to a controlled substance within the context of a removal decision under 8 U.S.C. § 1182(a)(2)(A), courts use the categorical approach. *Mellouli v. Lynch*, 575 U.S. 798, 804 (2015); *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 185–86 (2007). That approach follows a well-worn, formulaic path. First, courts compare the elements of the state crime to the elements of the relevant federal statute—or, in this type of matter, the elements of the state crime of conviction to the list of federally controlled substances. *See Mathis v. United States*, 579 U.S. 500, 505 (2016). If the elements match, the state conviction is sufficient for removal. But if the state statute criminalizes more conduct, or substances, than is prohibited at the federal level, courts evaluate whether the statute is divisible. *See id.* A divisible statute is one that establishes multiple, separate crimes— some of which may, and others may not, activate the federal consequence. When a statute is divisible, courts apply a modified version of the categorical approach and examine a limited set of documents and record material from the at-issue conviction to determine which crime within the statute the defendant committed. *See id.* at 505–06. On the other hand, if the statute is indivisible

and outlines only a singular crime, the conviction can never trigger the federal consequence because a court cannot be sure whether the defendant was convicted of a qualifying offense. *See id.* at 505.

Here, both the government and Bains agree that ORC § 2925.22 is the relevant statute of conviction and that it criminalizes a broader range of substances than those prohibited by the Controlled Substances Act. Instead, this dispute focuses on whether ORC § 2925.22 is divisible or not. If the statute is divisible, then it could, under some circumstances, serve as the basis for Bains's removal; but, if it is not, it cannot. Determining whether a statute is divisible is not always simple. And like the categorical approach itself, the Supreme Court has provided guidance on how we should navigate the inquiry.

First, we check whether "a state court decision definitively answers the question." *Mathis*, 579 U.S. at 517. If not, we scrutinize "the statute on its face" in search of clear demarcations of multiple crimes. *Id.* And if both of those actions fail, we can take a limited look at the record of conviction, like to the indictment and jury instructions, to see the listed elements of the charged offense. *Id.* at 517–18.

Bains claims that ORC § 2925.22 is indivisible, exclusively arguing that "the Ohio state courts have ruled definitively on" the matter. The government disagrees and adds that the statute itself and record of conviction support a finding of divisibility. After a review of Ohio case law, the statute, and a glance at the permissible portions of the record of conviction, we hold that ORC § 2925.22 is divisible.

To start, we note that Ohio courts have not definitively ruled on the divisibility or indivisibility of ORC § 2925.22. Bains points to two Ohio Supreme Court opinions—*State v. Smith*, 905 N.E.2d 151 (Ohio 2009) and *State v. Fairbanks*, 546, 885 N.E.2d 888 (Ohio 2008)—

to support his position, but neither is on point. In fact, neither addresses ORC § 2925.22 at all. For example, in *Smith*, the Ohio Supreme Court held that a defendant indicted for robbery under ORC § 2911.02 had sufficient notice that he could be found guilty of the lesser included offense of theft under ORC § 2913.02, even if the indictment omitted the "special finding" related to the value of the stolen items as the theft statute requires. 905 N.E.2d at 151–52. In a similar vein, the Ohio Supreme Court in *Fairbanks* determined that reckless operation of a vehicle under ORC § 4511.20 was not a lesser included offense of failure to comply with an order or signal of a police officer, ORC § 2921.331(B), and its statutory enhancement under § 2921.331(C)(5)(a)(ii), because the required elements did not overlap. 885 N.E.2d at 890–91. Far and away from "definitively answer[ing]" whether § 2925.22 is divisible, these cases, at best, present an obstructed view at how the Ohio Supreme Court interprets unrelated statutory provisions.[2] *Mathis*, 579 U.S. at 517.

---

[2] Although not on point, underlying the Ohio Supreme Court's decision in *Smith* is a discussion on what constitutes an essential element of a crime. Like ORC § 2925.22, the Ohio theft law includes statutory penalty enhancements that are triggered by certain factual findings. When, for example, the amount of stolen goods is between $500 and $5,000, the theft charge is a fifth-degree felony; but, if the value is between $5,000 and $100,000, then the theft charge is a fourth-degree felony. *Smith*, 905 N.E.2d at 154–55 (J. Lanzinger, dissenting opinion) (citing ORC § 2913.02(B)(2)). However, the court noted that, although the value of the property or degree of the offense must be included in the indictment, "value of stolen property is not an essential element of the offense of theft but, rather," a "special finding." *Id.* at 153. Bains references this opinion in an attempt to associate the statutory penalty provisions of ORC § 2925.22 with the theft statute, and, in turn, claim that the statutory penalties in ORC § 2925.33 are "special finding[s]" and not elements of the crime. CA6 R.13, Pet. Br., at 21. As discussed more below, this approach is problematic for a few reasons. First, the distinction between a special finding and essential element seems to be in name only. Even as it related to the theft statute: if it looks like an element, and acts like an element, it is an element. Indeed, *Smith* acknowledged that special findings must be "submitted to a fact-finder." 905 N.E.2d at 153. But, more importantly, the idea that statutory enhancements are special findings; and, therefore distinct from essential elements, runs contrary the Supreme Court's holding in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). *Id.* (specifying that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.").

With Ohio courts silent on the statute's divisibility, we next turn to the language of the statute itself. And the language of ORC § 2925.22 makes clear that the statute is divisible. The penalty section of the statute underscores that one can commit several crimes under the statute, subject to different penalties, depending on the identity of the drug at issue. ORC § 2925.22(B) (2003). For example, if the "drug involved is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, deception to obtain drugs is a felony of the fourth degree[.]" ORC § 2925.22(B)(1). And "[i]f the drug involved is a dangerous drug or a compound, mixture, preparation, or substance included in schedule III, IV, or V or is marihuana, deception to obtain a dangerous drug is a felony of the fifth degree[.]" ORC § 2925.22(B)(2). Where, as here, statutory variations "carry different punishments, then under *Apprendi* they must be elements." *Mathis*, 579 U.S. at 518; *see also Mihus v. Sessions*, 726 F. App'x 417, 426 (6th Cir. 2018) (holding that, because of the statutory enhancements based on drug schedule, that "the text of [the Ohio possession statute] establishes that any conviction requires identification of the specific controlled substance at issue, indicating that the identity of the controlled substance is an element of the crime."); *Banks v. United States*, 773 F. App'x 814, 818 (6th Cir. 2019) (noting that in the divisibility context, if "different alternatives generate different punishments, those alternatives necessarily qualify as elements that must be found by a jury under *Apprendi v. New Jersey*, 530 U.S. 466 (2000)" (cleaned up)); *United States v. Solomon*, 763 F. App'x 442, 448 (6th Cir. 2019) (clarifying, after discussing various penalties based on drug schedule, that "Ohio law therefore makes plain that a naloxone seller and a cocaine seller do not commit the same offense by different means; they commit different offenses altogether").

Even if the statute was not clear on its face, other, relevant tools available to the court indicate that ORC § 2925.22 is divisible. For example, courts also look to a state's pattern jury

instructions for guidance on this inquiry. *See United States v. Wilson*, 978 F.3d 990, 997 (6th Cir. 2020). Here, like the statute's language, Ohio's pattern jury instructions indicate that ORC § 2925.22 is divisible. They also specify the level of granularity at which the statute is divisible. Ohio's pattern criminal jury instructions for deception to obtain a dangerous drug state:

> The defendant is charged with deception to obtain a dangerous drug. Before you can find the defendant guilty, you must find beyond a reasonable doubt that . . . the defendant by deception
>
> (A)(1) procured (the administration of) (a prescription for) (the dispensing of) (*insert name of dangerous drug*).

2 CR Ohio Jury Instructions 525.22 (emphasis added). The instructions underscore that a jury grappling over whether a defendant is guilty under ORC § 2925.22 must unanimously find the specific name of the at issue substance. Looking both at the embedded statutory penalties and the pattern jury instructions, ORC § 2925.22 is divisible by drug.[3]

Having determined that ORC § 2925.22 is divisible, and by what means, we can use the modified categorical approach, and "examin[e] the charging document and jury instructions" in the underlying case, to determine Bains's crime of conviction. *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013). Here, the indictment makes clear that Bains's charge related to "Hydrocodone, a Schedule III drug." AR 247, Indictment. Likewise, the Ohio Journal Entry following his guilty plea notes that he was ultimately convicted of an attempted crime relating to the controlled substance listed in the indictment.[4] And there is no dispute that Hydrocodone was at all relevant

---

[3] The dissent's reasoning in concluding that ORC § 2925.22 is not divisible is unpersuasive. It primarily relies on *State v. Delfino*, 490 N.E.2d 884 (Ohio 1986), which involved a different statute (ORC § 2925.11) and a different issue (double jeopardy) than the one raised here. *Delfino* simply does not speak to our divisibility issue.

[4] Ohio Journal Entries are appropriate *Shepard* documents. *See United States v. Burris*, 912 F.3d 386, 407 n.22 (6th Cir. 2019) (en banc) ("We have held that Ohio state-court journal entries, such as the ones the government has submitted here, constitute valid Shepard documents."); *United States v. Adkins*, 729 F.3d 559, 567–68 (6th Cir. 2013).

times a federally controlled, Schedule III[5] substance, *see* 21 U.S.C. § 812, Schedule III, and that a conviction related to Hydrocodone triggers the consequences outlined in § 212(a)(2)(A)(i)(II) of the INA. Accordingly, the Immigration Judge and the BIA correctly concluded that Bains is removable under 8 U.S.C. § 1182(a)(2)(A)(i)(II).

**B. Notice to Appear.**

Next, Bains argues that his Notice to Appear was defective when it initially omitted the date and time for his removal hearing. Bains contends that, in light of *Niz-Chavez v. Garland*, 593 U.S. 155 (2021), any Notice to Appear that omits statutorily required information, like the time and place of the proceeding, from a single document is invalid. And because his first Notice to Appear lacked the required information, Bains argues that this intervening change of law entitles him to relief. *See Matter of Fernandes*, 28 I.&.N. Dec. 605, 608–09 (BIA 2022) (deeming the relevant statutory notice requirements mandatory claims processing rules).

But Bains did not raise this argument before the Immigration Judge. Therefore, as a claims processing rule, Bains forfeited this argument in raising it for the first time before the BIA on appeal. *See Alvarenga-Canales v. Garland*, 2023 WL 3094545, at *3 (6th Cir. Apr. 26, 2023) (explaining that the claims processing rule based on notice must be *properly* raised to be enforced); *see also Matter of Fernandes*, 28 I. & N. Dec. at 609 ("[T]he requirements in such rules are subject to waiver and forfeiture, unless properly and timely raised by the affected party.") As a result, Bains's belated Notice to Appear claim is unpersuasive.

IV.

We deny Bains's petition for review.

---

[5] In 2014, Hydrocodone was reclassified as a Schedule II substance. *See Schedules of Controlled Substances: Rescheduling of Hydrocodone Combination Products From Schedule III to Schedule II, 79 FR 49661.*

THAPAR, Circuit Judge, concurring. I join the majority opinion in full, as it correctly applies binding precedent. I write separately to explain why applying the categorical approach in immigration cases makes no sense.

Start with three undisputed truths. First, Bains is removable if he broke a law relating to a federally controlled substance. *See* 8 U.S.C. § 1227(a)(2)(B)(i). Second, hydrocodone is a federally controlled substance. 21 C.F.R. §§ 1308.12(b)(1)(11), 1308.13(e)(1)(iii)–(iv) (2003). Third, Bains attempted to obtain hydrocodone illegally.[1]

In light of these three facts, "[a] casual reader of today's decision might struggle to understand why we are even debating" Bains's removability. *United States v. Burris*, 912 F.3d 386, 407 (2019) (en banc) (Thapar, J., concurring). Yet here we are. The culprit? Once again, it's the categorical approach. *See, e.g.*, *Alejos-Perez v. Garland*, 93 F.4th 800, 809 (5th Cir. 2024) (Oldham, J., concurring in the judgment). Under this nonsensical approach, the fact that Bains committed a crime involving a controlled substance "is quite irrelevant" in determining whether his crime "relat[es] to a controlled substance." *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013) (quotation omitted); 8 U.S.C. § 1227(a)(2)(B)(1). Instead, it's relevant that Bains *could've* been convicted for the same crime had he sought laughing gas instead of hydrocodone. *See* Decision at 3, *Matter of Bains*, No. A 047-070-469 (B.I.A. Mar. 1, 2023) (citing *State v. Barcus*, 728 N.E.2d 420, 425 (Ohio Ct. App. 1999)) (noting Bains's statute of conviction could apply to nitrous oxide, which isn't federally controlled). Precedent mandates this laughable mode of analysis: under the categorical approach, we must give "preference [to] hypothetical facts over real ones." *Pereida v. Wilkinson*, 592 U.S. 224, 234 (2021).

---

[1] Although Bains contested this fact before the Board of Immigration Appeals, he doesn't do so before this court.

As I've pointed out many times before, the categorical approach is a judicial delusion. *See United States v. Cervenak*, 99 F.4th 852, 863–64 (6th Cir. 2024) (Thapar, J., concurring); *Battle v. United States*, No. 21-5457, 2023 WL 2487342, at *3 (6th Cir. Mar. 14, 2023) (Thapar, J., concurring); *United States v. Clark*, 46 F.4th 404, 415 (2022) (Thapar, J., concurring); *Lowe v. United States*, 920 F.3d 414, 420 (2019) (Thapar, J., concurring); *Burris*, 912 F.3d at 407 (Thapar, J., concurring). It forces judges to play make-believe and requires us to conclude that domestic violence, rape, and attempted murder aren't violent. *See Sanchez-Perez v. Garland*, 100 F.4th 693 (6th Cir. 2024) (domestic violence); *Lowe*, 920 F.3d at 420 (rape); *United States v. Hernandez-Montes*, 831 F.3d 284, 294 (5th Cir. 2016) (attempted murder). But if that weren't enough, there's yet another reason to abandon the categorical approach, at least in immigration cases: Its strongest doctrinal foundation doesn't apply here.

The surest footing for the categorical approach rests on the Supreme Court's decision in *Apprendi v. New Jersey*.[2] *See Mathis v. United States*, 579 U.S. 500, 511–12 (2016); *see also id.* 521–23 (Thomas, J., concurring). There, the Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). And under various federal laws, defendants with past convictions meeting certain criteria may qualify for longer sentences in the future. *E.g.*, 18 U.S.C. § 924(e)(1) (imposing mandatory minimum on defendants who have three previous convictions for a "violent felony"). Thus, under *Apprendi*, a judge couldn't impose these longer sentences unless the relevant facts were proven to a jury (or the defendant pled guilty to those facts, like here). In other words, for a defendant's previous

---

[2] As others have pointed out, the more common defense of the categorical approach—that statutory text mandates it—is also inapplicable to the immigration statute involved here. *See Mellouli v. Lynch*, 575 U.S. 798, 813–21 (2015) (Thomas, J., dissenting).

conviction to trigger a sentencing enhancement, the relevant fact must have been proven beyond a reasonable doubt.

My doubts about this argument aside, one thing's clear: It offers no support for applying the categorical approach in immigration cases. Unlike a criminal trial, there's no right to a jury or proof beyond a reasonable doubt in a removal proceeding. Rather, the government need only prove its case to an immigration judge by "substantial evidence." *Zometa-Orellana v. Garland*, 19 F.4th 970, 976 (6th Cir. 2021) (hyphen omitted). Thus, it doesn't make sense to ask whether a jury needed to identify the drug Bains tried to obtain beyond a reasonable doubt. If an immigration judge finds substantial evidence that his conviction involved a federally controlled substance, that should suffice for removal. The Sixth Amendment doesn't apply to immigration, so the *Apprendi* rationale doesn't apply here either.

More broadly, the categorical approach makes a mockery of our immigration statutes. It's a privilege to be in the United States, not a right. *See Trump v. Hawaii*, 585 U.S. 667, 703 (2018). So when immigrants abuse that privilege by committing crimes, they shouldn't be able to exploit obscure technicalities to avoid removal. That protects no one and harms everyone. When Congress passed deportation statutes, its goal wasn't to let drug dealers and violent criminals avoid removal by dreaming up counterfactual, hypothetical versions of their crimes. *Contra, e.g.*, *Hillocks v. Att'y Gen. United States*, 934 F.3d 332 (3d Cir. 2019) (holding that a heroin dealer wasn't deportable); *Sanchez-Perez*, 100 F.4th at 696 (holding immigrant who pled guilty to domestic violence wasn't removable after he allegedly strangled and flogged a woman who refused to have sex with him). Yet that is where the categorical approach has taken us.

HELENE N. WHITE, Circuit Judge, dissenting.  Although I agree that Ohio Revised Code § 2925.22 is clearly divisible, as manifested by the differing penalties set forth in subsections (B)(1) and (2), I find the issue of the further divisibility of the statute to be a difficult one.  On its face, the statute divides the offense into subsections (B)(1) and (2), apparently enumerating distinct offenses with alternative elements and punishments: (1) deception involving a drug on Ohio schedule I or II (excluding marijuana) and (2) deception involving a "dangerous drug" (a defined term), a drug on Ohio schedule III, IV, or V, or marijuana.  But whether the statute is further divisible into distinct offenses with alternative elements based on drug schedule or the particular drug involved is unclear.  And because application of the categorical approach as set forth in *Mathis v. United States*, 579 U.S. 500 (2016), fails to provide the requisite clarity, I must conclude that the offense of which Harmeet Bains was convicted does not necessarily involve a federally controlled substance, and he is not removable.

"'Elements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'"  *Id.* at 504 (quoting *Black's Law Dictionary* 634 (10th ed. 2014)).  "At a trial, they are what the jury must find beyond a reasonable doubt to convict the defendant[,] and at a plea hearing, they are what the defendant necessarily admits when he pleads guilty."  *Id.* (citations omitted).  Elements stand in contrast to the "various factual means of committing a single element."  *Id.* at 506.  To resolve whether a statute lists alternative elements, thus defining separate offenses, or rather spells out several factual means of committing a single offense, we first ask whether "a state court decision definitively answers the question."  *Id.* at 517.  We then ask whether "the statute on its face . . . resolve[s] the issue.  If statutory alternatives carry different punishments, then under *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000),] they must be elements.  Conversely, if a statutory list is drafted to offer 'illustrative examples,' then it includes

only a crime's means of commission." *Id.* at 518 (citations omitted). Finally, "[i]f state law fails to provide clear answers, [we] have another place to look: the record of a prior conviction itself." *Id.* But "such a 'peek at the [record] documents,'" like the indictment and corresponding jury instructions, "is for 'the sole and limited purpose of determining whether [the listed items are] element[s] of the offense.'" *Id.* (alterations in original) (citation omitted). We do not look to these documents, often called "*Shepard* documents," *see Shepard v. United States*, 544 U.S. 13, 26 (2005), to ascertain the facts underlying the conviction because if the statute is not divisible, the facts of the offense are irrelevant.

Because the parties point to no Ohio court decision definitively stating § 2925.22's elements, we ask whether "the statute on its face . . . resolve[s] the issue," *Mathis*, 579 U.S. at 518. In interpreting Ohio statutes, we "must give effect to the words used and refrain from inserting [words] or deleting language chosen by the General Assembly." *Dodd v. Croskey*, 37 N.E.3d 147, 154 (Ohio 2015). Here, § 2925.22 on its face does not specify separate offenses based on particular drugs or schedules. Rather, the statute groups schedules I and II (excluding marijuana) into one, fourth-degree-felony offense, and schedules III, IV, and V, marijuana, and "dangerous drugs" into a second, fifth-degree-felony offense. The Assembly also gradated punishment based on these two groupings, not by drug or schedule. The Assembly's textual choices suggest that particular drugs and schedules are not alternative elements under § 2925.22 but rather alternative means of committing the distinct fourth-degree and fifth-degree offenses. I note that the Assembly later amended the language of § 2925.22 to gradate punishment based on bulk amount, which varies by substance, *see* Act of July 1, 2008, Ohio Laws 6751, 6798–800 (codified at Ohio Rev. Code

§ 2925.22), thus delineating separate offenses, but Bains was convicted under the old statute, which made no such distinctions.[1]

Although not cited by the parties, not definitively resolving the elements of § 2925.22, and dealing with a distinct double-jeopardy question, the Ohio Supreme Court's decision in *State v. Delfino*, 490 N.E.2d 884 (Ohio 1986), weighs against the majority's conclusion. There, the court considered whether "[t]he simultaneous possession of different types of controlled substances can constitute multiple offenses under [Ohio Revised Code §] 2925.11" for purposes of a double-jeopardy challenge. *Id.* at 885. The court answered in the affirmative, but its opinion suggests that drug groupings, not particular drugs or schedules, are the alternative elements separating offenses under § 2925.22.

The court in *Delfino* explained that § 2925.11 provided, in relevant part, that:

(A)     No person shall knowingly obtain, possess, or use a controlled substance.

\*     \*     \*

(C)     Whoever violates this section is guilty of drug abuse:

(1)     If the drug involved is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, drug abuse is a felony of the fourth degree, and if the offender has previously been convicted of a drug abuse offense, drug abuse is a felony of the third degree.

(2)     If the drug involved is a compound, mixture, preparation, or substance included in schedule III, IV, or V, drug abuse is a misdemeanor of the third degree, and if the offender has previously been convicted of a drug abuse offense, drug abuse is a misdemeanor of the second degree.

(3)     If the drug involved is marihuana, drug abuse is a misdemeanor of the fourth degree, unless the amount of marihuana involved is less than one hundred grams, the amount of marihuana resin, or extraction or preparation of such resin, is less than five grams, and the amount of such resin in a liquid concentrate, liquid extract, or

---

[1] Controversies regarding § 2925.22's elements like the one here are unlikely to arise often, given the Assembly's substantial amendment of § 2925.22 sixteen years ago.

> liquid distillate form, is less than one gram, in which case drug abuse is a minor misdemeanor.

Act of March 21, 1980, Ohio Laws 639, 639–40 (codified as amended at Ohio Rev. Code § 2925.11); *see* 490 N.E.2d at 886. The double-jeopardy issue in *Delfino* arose because law enforcement seized a mirror, later found to have a trace amount of cocaine, and a pipe, containing a small amount of marijuana, from the defendant's vehicle; the defendant pled guilty to drug abuse for possession of marijuana under this statute; and the government later indicted the defendant on a drug-abuse charge for possession of the cocaine, a schedule II drug. *See* 490 N.E.2d at 885.

In resolving the double-jeopardy challenge, the court applied *Blockburger v. United States*, 284 U.S. 299 (1932), to § 2925.11's subsections "to determine whether there are [separate] offenses or only one," specifically, by examining "whether each provision requires proof of a fact which the other does not." 490 N.E.2d at 887 (quoting 284 U.S. at 304). This language maps onto the definition of "element" as *Mathis* used the term. *See* 579 U.S. at 504. In concluding that § 2925.11's subsections amounted to three separate offenses, the court reasoned as follows:

> Under the provisions of R.C. 2925.11(C)(1), possession of cocaine is a felony. Under R.C. 2925.11(C)(2), possession of a Schedule III, IV or V controlled substance is a third degree misdemeanor. Under R.C. 2925.11(C)(3), possession of less than one hundred grams of marijuana is a minor misdemeanor and possession of more than that is a fourth degree misdemeanor. Proof of possession of marijuana will not sustain a conviction for possession of cocaine. Likewise, proof of possession of cocaine will not sustain a conviction for possession of marijuana. Therefore, conviction of a felony under R.C. 2925.11(C)(1) requires proof of facts that R.C. 2925.11(C)(2) or 2925.11(C)(3) do not. Since different facts are required to be proven to sustain a conviction under the different subsections, we can conclude via the *Blockburger* test that *the legislature intended the possession of the different drug groups to constitute different offenses. This court specifically holds that possession of a substance or substances in Schedule I or II, with the exception of marijuana, is a single and separate offense under R.C. 2925.11(C)(1). Possession of a substance or substances included in Schedule III, IV or V is a single and separate offense under R.C. 2925.11(C)(2). Possession of marijuana is a single and separate offense under R.C. 2925.11(C)(3).*

490 N.E.2d at 888 (emphasis added) (citations omitted).

*Delfino* thus indicates that § 2925.11's subsections described separate offenses with alternative elements based on drug groupings, not based on particular drugs or schedules. Given that § 2925.11's language grouped substances similarly to § 2925.22, it is reasonable to conclude that the latter section created separate offenses in the same manner.

*Delfino* is the only Ohio Supreme Court case remotely on point. The various divisions of the Ohio Court of Appeals have been inconsistent in their treatment of *Delfino*. *Compare, e.g.*, *State v. Neal*, No. 53475, 1988 WL 18811, at *1–2 (Ohio Ct. App. Feb. 18, 1988) (invoking *Delfino* in concluding that the defendant's convictions for simultaneously possessing two drugs were not separate offenses and thus had to merge for sentencing because the drugs were both schedule II substances), *and State v. Hipple*, No. 98CA49, 1999 WL 317292, at *3 (Ohio Ct. App. May 21, 1999) (citing *Delfino* in concluding that "absent some indication of [the legislature's] purpose [to make each gun a defendant simultaneously possesses, rather than the transactional act of carrying it, a separate offense], such as differentiated penalties according to the type of gun involved, the assumption [that each gun constitutes the unit of prosecution] is unwarranted"), *with State v. Pitts*, No. 99 CA 2675, 2000 WL 1678020, at *12 (Ohio Ct. App. Nov. 6, 2000) (calling *Delfino*'s conclusion about the level of the statute's divisibility dicta).

Turning to the next tool in our toolkit—the record of conviction, *see Mathis*, 579 U.S. at 518–19—the indictment is ambiguous at best and arguably casts doubt on the majority's conclusion. The indictment alleged that Bains "did by deception, as defined in Section 2913.01 of the Ohio Revised Code, procure the administration of, a prescription for, or the dispensing of a dangerous drug, to wit: Hydrocodone, a Schedule III drug." A.R. 206. That the indictment states "dangerous drug" and mentions "Hydrocodone, a Schedule III drug," only after "to wit" suggests, albeit weakly, that neither the particular drug nor the schedule is the element of the offense but

only the factual means. *See To Wit*, *Black's Law Dictionary* (11th ed. 2019) ("[t]hat is to say; namely"); *Greer v. United States*, 749 F. App'x 887, 892 n.4 (11th Cir. 2018) (per curiam) (concluding that "Aggravated Assault" and "Murder" following "to wit" in indictments charging terroristic threats under Georgia law "were just references in the indictments against [the defendant]" and "not elements to be found by the jury"); *cf. Mellouli v. Lynch*, 575 U.S. 798, 803 (2015) (state-court indictment charging that the defendant "use[d] or possess[ed] with intent to use drug paraphernalia, to-wit: a sock, to store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body a controlled substance" (alterations in original) (citation omitted)).

Relying on Ohio's pattern jury instructions, the majority concludes that § 2925.22 is further divisible based on the particular drug involved. *See* Maj. Op. 9. The instructions provide that the jury must find that the defendant "procured (the administration of) (a prescription for) (the dispensing of) (*insert name of dangerous drug*)." *Id.* (citation omitted). The majority reasons from this language that the instructions "specify the level of granularity at which the statute is divisible." *Id.*

But the majority may read too much into the "insert name of dangerous drug" language. In a similar context, the Second Circuit observed that "'the instructions do not say it is impermissible to identify more than one substance.' Nor do they suggest that it would be inappropriate for some jurors to specify one controlled substance and for other jurors to identify a different one." *Stankiewicz v. Garland*, 103 F.4th 119, 132 (2d Cir. 2024) (quoting *Harbin v. Sessions*, 860 F.3d 58, 68 (2d Cir. 2017)).

*   *   *

Were it not for *Delfino*, I might have agreed with the majority's conclusion. But the categorical approach demands "certainty." *Mathis*, 579 U.S. at 519 (quoting *Shepard*, 544 U.S. at

26). And in the rare circumstance where a court cannot be certain that an offense necessarily involves a federally controlled substance and thus "indeterminacy" prevails, *id.*, the court cannot find the strictures of the categorical approach satisfied, *see Alejos-Perez v. Garland*, 991 F.3d 642, 651 (5th Cir. 2021); *United States v. Degeare*, 884 F.3d 1241, 1248 (10th Cir. 2018). Because that is the case here,[2] I conclude that the Board of Immigration Appeals erred in finding Bains removable and, therefore, respectfully dissent.

---

[2] I recognize that there is no dispute that Bains, in fact, committed an offense involving a federally controlled substance, as the concurrence observes. But as the concurrence also acknowledges, that is not the inquiry the Supreme Court instructs us to undertake.